LIBBY (HARRINGTON v.). See Case No. 6,107.

LIBBY v. PLATT. See Case No. 8,235.

LIBBY (UNITED STATES v.). See Cases Nos. 15,596 and 15,597.

LIBERTA, The RELIGIONE E. See Case No. 11,694.

---

## Case No. 8,337.

### LIDDERDALE v. ROBINSON.

[2 Brock. 159.] [1]

Circuit Court, E. D. Virginia. Nov. Term, 1824. [2]

EXECUTORS AND ADMINISTRATORS—ACCOUNTING—VOUCHERS — ADMINISTRATOR DE BONIS NON — JUDGMENTS AGAINST ADMINISTRATOR—PRIORITY OF DEBTS—PRINCIPAL AND SURETY — SUBROGATION.

1. A commissioner of this court, to whom the accounts of a surviving administrator were referred for settlement. adopted the report of a former commissioner. (to whom the accounts of all the administrators had been referred), made many years before, in a distinct suit, to which there were different parties plaintiffs. and which report did not appear ever to have been acted on or approved by the court to which it was made. When the first report was made, all the administrators were living, but they had been dead long before the accounts of the surviving administrator were referred in the second suit, and the office of the surviving administrator, in the mean time, had been consumed by fire, and many of his papers destroyed with it. *Held*, that vouchers to sustain the account in such a case will not be required. The books of the administrators, if they appear to have been fairly kept, and the account of the former commissioner founded upon them, ought to be received as prima facie evidence, subject to be disproved, so far as either

1 [Reported by John W. Brockenbrough. Esq.]
2 [Affirmed in 12 Wheat. (25 U. S.) 594.]

party can disprove them, or to such exception as either party may be able to sustain.

[Cited in Pulliam v. Pulliam, 10 Fed. 56.]

2. Where an administration bond is joint, one administrator is responsible for his co-administrator.

[Cited in Cox v. Thomas, 9 Grat. 318; State v. Farmer, 54 Mo. 447; Caskie v. Harrison, 1 Hans. (76 Va.) 94.]

3. An administrator de bonis non, who is also the executor of the surviving administrator, who fails for a long period of time to call the agents, of the former administrators to an account, is chargeable with the whole balance appearing to be due from those agents, unless he can relieve himself from the charge of gross negligence.

4. Many judgments when assets were rendered against administrators, and assets to a large amount subsequently came into the hands of the administrator de bonis non—*Held*, that these judgments retained the same rank which would belong to the particular instruments on which they were founded. The only effect of such judgments is to give priority to other debts of the same dignity, on which either no judgments or subsequent judgments were rendered.

5. Where there are two sureties on bills of exchange and specialties, and one of them has paid more than his proportion, and his representatives seek contribution out of the estate of his co-surety, the surety who has overpaid will be subrogated to the rights of the creditor. Equity would, indeed, restrain him from recovering more than his proportion, but to that extent, his claim upon his co-surety is precisely as valid as upon his principal, and the representatives of the surety who has overpaid, are entitled to rank according to the dignity of the claims on which such excess was paid. The principle of substitution applies equally to cases arising between co-sureties and those between a surety and his principal.

[Cited in McLean v. Lafayette Bank, Case No. 8,888; Glasgow v. Lipse, 117 U. S. 336, 6 Sup. Ct. 761.]

[Cited in Lyon v. Bolling, 9 Ala. 463; Bowen v. Hoskins, 45 Miss. 183. Quoted in Orem v. Wrightson, 51 Md. 44. Cited in note to New Bedford Inst. for Sav. v. Hathaway, 134 Mass. 73; Hazelton v. Valentine, 113 Mass. 479; Smith v. Rumsey, 33 Mich. 196; Wright v. Grover, 82 Pa. St. 82. Followed in Felton v. Bissel, 25 Minn. 20; Robertson v. Trigg, 32 Grat. 86; Welch v. Strother, 74 Cal. 412, 16 Pac. 22.]

This suit was brought by William Rae and Julia Lidderdale, of London, executor and executrix of William Robertson Lidderdale, who was executor of John Lidderdale, deceased, against James Lyons, administrator de bonis non of John Robinson, deceased. The bill, which was filed in 1820, states, that in the year ——, William Robertson Lidderdale, executor of John Lidderdale, filed his bill against Edmund Pendleton and Peter Lyons, administrators of John Robinson, deceased, claiming satisfaction for four bills of exchange drawn by John Robinson, and taken up under protest by the testator John, for the honour of the drawer. In June, 1797, the cause came on to a hearing, during the sickness and absence of Andrew Ronald, the plaintiff's counsel, when a decree for assets was rendered in their favour for £793 16s. 8d. sterling, with interest on £500 16s. at five per cent. from the 4th day of November, 1765, and on the residue from the 1st day of May, 1766, to be considered as a debt due by simple contract: That William Robertson Lidderdale departed this life in the year 1814, in England, and the plaintiffs, his executors, had lately come to a knowledge of the said decree. That the said Edmund Pendleton and Peter Lyons were both dead, and that administration de bonis non on the estate of John Robinson had been granted to James Lyons, to whose hands assets had recently come to a great amount. The bill prayed that the decree of June, 1797, might be reviewed and reversed, because the debt was decreed as a simple contract, whereas the plaintiffs were in possession of the protested bills on which it was due, which gave it the dignity of a judgment, and that James Lyons, the administrator de bonis non, should be required to render an account, and that the plaintiffs, should be paid their demand out of the assets. A copy of the decree was filed as stated in the bill, and the copy of a judgment, by consent, of November 22, 1797, in an action on the case for $1735 80 and costs, when assets.

On the 12th of June, 1822, the cause came on to be heard on the bill taken for confessed, and on the decree sought to be reviewed, which was filed as an exhibit, on consideration whereof, the court, being of opinion that the complainants were not entitled to have the decree, sought to be reviewed, set aside or opened, directed one of its commissioners to settle and report the administration account of the defendant, and also to report the different debts due from the estate of John Robinson, and of the debts paid by the administrators of the said estate, stating the dignity of each debt, and also the outstanding assets. The commissioner made his report in December, 1822. At the same time, the report was recommitted, with instructions to the commissioner to complete the same, by reporting the accounts between Peter Lyons, surviving administrator of John Robinson, and the estate of John Robinson; and it was farther ordered that he report the debts paid by the administrators, stating the dignity of each, and any additional evidence in support of debts now claimed from the estate. And liberty was allowed for any creditors to exhibit their claims. This report was made in June, 1824. In the progress of the cause, other creditors exhibited their claims against the estate of John Robinson. The representatives of Hanberry claimed the amount of a judgment when assets, rendered in June, 1767. The judgment was for £2089 17s. 4d. sterling, and costs, and a copy thereof was filed as an exhibit. The commissioner reported a very large fund, partly in the hands of the administrator de bonis non, and part not yet collected, respecting which he required the direction of the court. He also reported the claims of creditors, to a great amount, leaving it to the court to ascertain, and settle their respective rank and dignity.

Among these, is the claim of John Smith,

executor of John Smith, deceased. The case is this. John Robinson and John Smith were the joint sureties of Thomas Reid Rootes, who died insolvent, in consequence of which, the sureties paid the debt. John Smith paid more than a moiety of the debt, and his representative filed his bill to obtain contribution from the estate of John Robinson, deceased, who was his joint surety. The original debt was a protested bill of exchange, which, according to the law then in force in Virginia, was of equal dignity with a judgment. On the part of Smith, it was contended that the joint surety who had discharged this debt, was substituted in the place of the original creditor, and that his claim for contribution against his joint surety, held the same dignity that the claim of the original creditor, against the same person, would have held. On the part of the defendant, and of the other creditors, it was contended, that the claim of John Smith was that of a simple contract creditor only, and that he must rank with simple contract creditors. The cause came on, on exceptions to the report of the commissioner of June, 1824.

Before MARSHALL, Circuit Justice, and TUCKER, District Judge.

MARSHALL, Circuit Justice. The counsel for the plaintiffs, Lidderdale and Hanberry, have filed several exceptions to this report, the most important and difficult of which, respects a sum alleged by the administrator de bonis non of John Robinson, to be due to Peter Lyons, the surviving administrator of John Robinson, whose executor the said James Lyons is. The commissioner has stated this claim in different ways.

The counsel for the plaintiffs objects to this account altogether, because he alleges: (1) That it is not supported by vouchers. (2) That Peter Lyons is responsible for his co-administrator, Edmund Pendleton, they having given a joint bond, and Edmund Pendleton appearing to be largely indebted to Robinson's estate. (3) That balances are stated to be due from George Brooke and others, the agents of the administrators for which the said Peter Lyons is responsible.

1. The commissioner states that this account, from 1766 to 1784, inclusive, was collected from the books of Peter Lyons, and from 1799 to the date of the report, is supported by vouchers, and this court must presume that his statement is correct, unless the contrary is shown. The account from the year 1784, to January, 1799, is taken from a report made by Commissioner Hay, in pursuance of an order of the high court of chancery, in which ——— were plaintiffs, and the administrators of John Robinson, deceased, were defendants. This part of the account does not show the particular items, but the annual amount of receipts and disbursements. Commissioner Hay's report was made in the year 1799, while the administrators were alive, but does not appear ever to have been acted on by the court. If the transactions were recent, vouchers to sustain the account would of course be required. But in a case of such long standing, where the parties are all dead, strict proof is not to be looked for. It is the less to be expected in this case, as it is known that the office of Peter Lyons was consumed by fire, and that very many of his papers were destroyed with it. In such a state of things, the court is much inclined to the opinion that the books of the administrator, if they appear to have been fairly kept, and the account of Commissioner Hay, founded on those books, ought to be received as prima facie evidence, subject to be disproved, as far as either party may disprove them, or to such exception as either party may make, or be able to sustain. If this course be not pursued, and the books and account be discarded, it would be necessary to remodel the account on such vouchers as either party may be able to adduce. The result of such an account could not be as satisfactory, and probably would not approach the truth as nearly as that which is now before the court.

2. The responsibility of Peter Lyons for his co-administrator must be admitted, but the amount due from that co-administrator cannot be assumed, unless his representative were before the court. It is the duty of the administrator de bonis non of John Robinson, to bring him to an account before that forum which can take cognizance of the case, and he is chargeable with great neglect of duty in this respect, as Edmund Pendleton has been dead twenty years. The court will not, for the present, decide positively on this subject, but must resume the consideration of it, should this unjustifiable delay be continued.

3. The surviving administrator ought to have brought the agents of the administrators to a settlement of their accounts, and this duty, on the death of Peter Lyons, devolved on the administrator de bonis non, who is also executor of the surviving administrator. It appears to me to be reasonable that the whole balances due from these agents should be chargeable to him, unless he can free himself from the charge of gross negligence for having failed to call them to a settlement. The debt due to Peter Lyons, whatever may be its amount, is admitted to be a debt of the first dignity. It is next to be inquired how the remaining creditors rank.

There being many judgments rendered, to be discharged when assets shall come to the hands of the administrators, the first question was, whether these judgments should rank according to their date, and should take rank of other debts on which no judgment had been rendered, or should retain the same rank which would belong to the particular instruments on which they were rendered. This court is of opinion that they retain their original rank, because every

creditor is supposed to be entitled to a judgment when assets, and it is not reasonable that such a judgment should disturb the order in which debts are payable by law, or should have any other effect than to establish the amount, and to give priority to other debts of equal dignity on which either no judgment, or a subsequent judgment, may have been rendered.

Money due to the estate of a deceased person, committed by a court to the said John Robinson (1 Rev. Code 1819, p. 389, § 60), or on judgments against the said intestate in his lifetime, are first in rank. Next, are protested bills of exchange, and then specialties.[3] Among these, judgments on bills of exchange first rank according to their date, and next, protested bills on which no judgments have been obtained, if the requisites of the law have been complied with. Next in order, are debts due on bills which have been paid by securities; on this subject, a question of difficulty has been made. John Smith and John Robinson, were co-sureties on bills of exchange and specialties to a very great amount, on which John Smith paid more than his proportion, and his representatives now claim contribution from the estate of John Robinson. This claim is admitted, but it is contended that it is to be considered merely as a debt on simple contract. The question submitted to the court is, whether a co-surety who has paid a debt, has a right to stand in the place of the creditor, and to be clothed with all the rights and privileges of the creditor, so far as his equity extends, or can resort only to the implied contract which the law raises in such a case. This is a question which depends on the authority of decided cases; it has occurred most frequently in controversies between a surety and the principal debtor.

In the case of Eppes v. Randolph,[4] a bond was executed by Randolph to Bevins, with Wayles as his surety. Randolph afterwards conveyed his estate to his sons, and the creditor obtained a decree against the executors of Wayles for the amount of the bond. A suit was brought by the executors of Wayles against the representatives and heirs of Randolph, alleging the insufficiency of the personal estate, and praying that the estates conveyed to the children might be subjected to the claims of creditors. Other creditors also filed their claims, and insisted that the debt to the executors of Wayles had only the dignity of a simple contract. In delivering his opinion the chancellor said: "That if Wayles's executors had taken an assignment to their trustees of Bevins's bond, they would, in his name, have been entitled to the same relief that Bevins himself would, and that a court of equity would have enjoined the heir of Richard Randolph, deceased, from pleading payment by the sureties' executors: that they ought to have the same remedy as if such assignment had been made." In affirming this part of the chancellor's decree, the president of the court of appeals said "that the appellees, executors of John Wayles, ought to stand in the place of John Bevins, and be considered as bond creditors, so far as may effect the distribution of remaining assets, but not so as to charge the executors with a devastavit on account of payments or judgments to simple contract creditors."

In the case of Tinsley v. Anderson, 3 Call, 329, where the proceeds of the real estate of a living debtor were to be distributed according to the priority of the several liens upon it, the court said: "That all the creditors by judgments or decrees, ought to be paid out of the general fund, according to the priority of recovery, with this reservation, that when a prior creditor shall not have received his money of sureties, or sued out execution on his judgment within a year, he shall yield priority to subsequent judgments on which executions shall have been so issued, or the money received of sureties. In both instances of the money paid by sureties, as well as in all other instances, sureties ought to be placed in the situation of the creditors they shall have paid, or be bound to pay." These two cases establish the principle incontrovertibly in Virginia, that the surety who has paid a debt stands, as respects his claim on the principal or his estate, to every purpose in the place of the creditor. The same principle is recognised in New York, as appears by 4 Johns. Ch. 123, 530.[5] In Lawrence v. Cornell, 4 Johns. Ch. 545, it was enforced against a junior mortgagee. This principle is also recognised in South Carolina, 4 Desaus. Eq. 44.[6]

The principle that a person who has paid money as surety, or on account of another, shall be substituted in the place of the creditor, seems to be familiar in England. In 3 P. Wms. 400, it is laid down by the chancellor, that an executor who has paid beyond the assets which have come to his hands, shall rank as the creditor whose debt he has paid; and in 1 Atk. 134,[7] the chancellor says: "Indeed, where there is a principal and surety, and the surety pays off the debt, he is entitled to have an assignment of the security in order to enable him to obtain satisfaction for what he has paid over and above his own share." The principle is also laid down in 2 Ves. Jr. 302,[8] and 11 Ves. 22.[9]

---

[3] But by the act of March 29, 1831, which took effect the 1st of June thereafter, it is declared "that in the administration of the personal assets of decedents' estates, debts due by specialty and promissory notes, or other writings signed by the decedent, or some other person, by him or her thereunto lawfully authorized, shall be regarded and taken to be of equal dignity." Sess. Acts 1830–31, p. 102, c. 33.

[4] 2 Call, 103 (Tate's Ed.).

[5] Hayes v. Ward and Scribner v. Hickok.

[6] Tankersley v. Anderson.

[7] Ex parte Crisp.

[8] Ex parte Mills.

[9] Wright v. Morley.

Indeed it seems to be too well settled to be controverted, and we find it generally laid down as an acknowledged rule rather than decided in a contested case.

But it has been supposed that, though this rule must be admitted as applicable to cases between a surety and his principal, it will not apply between co-sureties. I can perceive no reason for this distinction. The principle which the cases decide is this: Where a person has paid money for which others were responsible, the equitable claim which such payment gives him on those who were so responsible, shall be clothed with the legal garb with which the contract he has discharged was invested, and he shall be substituted, to every equitable intent and purpose, in the place of the creditor whose claim he has discharged. This principle of substitution is completely established in the books, and being established, it must apply to all persons who are parties to the security, so far as is equitable. The cases suppose the surety to stand in the place of the creditor, as completely as if the instrument had been transferred to him, or to a trustee for his use. Under this supposition, he would be at full liberty to proceed against every person bound by the instrument. Equity would undoubtedly restrain him from obtaining more from any individual than the just proportion of that individual; but to that extent, his claim upon his co-surety is precisely as valid as upon his principal. In reason, I can draw no distinction between the cases, and none, I think, has been drawn by the courts. In Parsons v. Briddock, 2 Vern. 608, the sureties who had paid a bond debt, on which a judgment was obtained against Dr. Briddock, were substituted in the place of the creditor, as against the bail to the action in which the judgment against Briddock had been rendered, and the bail was compelled to pay them the money they had paid to the creditor. In this case, the principle of substitution was applied against a surety.

The liability of co-sureties, and the dignity of a debt in a case where a judgment had been discharged by a co-surety, who was entitled to contribution, was decided, on great deliberation, after very solemn argument, in the case of Burrows v. Carnes' Adm'rs, 1 Desaus. Eq. 409.

I was originally strongly inclined to the opinion that, in a case where a party could sue at law, and would be, in a court of law, a simple contract creditor only, he would retain the same rank in a court of equity also, and would not be substituted in the place of the original creditor. But I am satisfied, on examining the subject, that the decisions are otherwise, and I must acquiesce in those decisions. The representatives of John Smith, then, will rank according to the dignity of the claims on which they have paid more than their equal proportion. All other sureties will, in like manner, be substituted for the creditor whose debt they have discharged, and will rank as he would have ranked were he before the court.

NOTE. The court, consisting of Marshall, Circuit Justice, and Tucker, District Judge, being divided in the opinion upon the question whether the claim of John Smith to contribution was entitled to be substituted to the same *rank and dignity* with the debt which he had paid, as to the excess over and above a moiety thereof, certified that question to the supreme court for its decision. The supreme court unanimously sustained the opinion of the chief justice. See 12 Wheat. [55 U. S.] 594; 6 Cond. Rep. Sup. Ct. U. S. 656.

[NOTE. Further decisions in reference to the interests of James Lyons and Hanberry's executors in the Robinson estate were rendered by a decree (not reported) of this court at the December term, 1828. The claims of the representatives of Capel and Osgood Hanberry having been established by the court as a debt of lowest dignity and the receivers of the estate having transferred, without authority, securities belonging to the estate, to their attorney, the legatees of Peter Lyons objected to this transfer, and obtained an injunction (case not reported) restraining the attorney from paying over the money to his clients. The latter thereupon moved to dissolve the injunction. The motion was overruled. Case No. 5,759.]