JOHN FELTON, JR., *vs.* PETER BISSEL, Administrator, and others.

April 20, 1878.

**Surety—Subrogation—Payment of Debt by Surety before due.**—Where a surety pays the debt to the creditor, neither the debt nor any security given by the principal debtor or a cosurety is thereby extinguished, whether he pay the debt before or after it becomes due. If the debt be then due, he becomes, by the payment, subrogated to the right of the creditor in the debt and security, both as against the principal debtor and his cosurety, so far as may be necessary to enforce indemnity from the one or contribution from the other; and he may take from the creditor an assignment of the debt and securities, both of the principal debtor and cosurety, for that purpose. If he pay the debt before it is due, his right to subrogation becomes perfect when the debt becomes due, and he may then take an assignment; or, if he have taken one at the time of paying the debt, it operates to vest in him the legal title as soon as the debt becomes due, and he may then, for the purpose of compelling indemnity or contribution, enforce the debt and securities as assignee.

**Same—Notes and Mortgages assigned to Surety held not extinguished.**—S., as principal, and F. and B. as sureties, executed to L. two promissory notes, to become due at different dates, and, to secure them, S. executed to L. a mortgage, with the usual power of sale, upon forty acres belonging to him, and F. executed to L. a mortgage, with such power, upon forty acres belonging to him. After the first, but before the second of the notes became due, B. paid the amount of them to L. and took from him an assignment of the notes and mortgages, and, before the second note fell due, proceeded, as assignee, to foreclose both mortgages, under the powers, for the amount of both notes, and sold first, under the foreclosure of the S. mortgage, for more than enough to satisfy the note then due, and then, under the F. mortgage, sold the land described in it for

enough to satisfy the second note, becoming himself the purchaser. In an action by F. to have the second note and the F. mortgage adjudged satisfied, and the assignment of the note and mortgage, and the foreclosure of the F. mortgage, and the certificate thereunder, adjudged null and void: *held*, (1) that as between B. and F., the notes and mortgages were not extinguished by B's payment of their amount to L.

**Same—Title of Surety to Note and Mortgage already due.**—2. That by such payment and the assignment by L. the legal title to the note then due, and of the mortgages, so far as they secured that note, vested in B., as assignee, so that he could enforce the same against S., to compel indemnity, or against F., to compel contribution.

**Same—to Note and Mortgage not due.**—3. That the legal title to the note not then due, and the mortgages, so far as they secured the same, did not at once vest in B., as assignee, but, under the assignment, would so vest as soon as his right of subrogation should become perfect by that note falling due.

**Same—Foreclosure of last Mortgage held void.**—4. That, at the time of the foreclosure of the F. mortgage, the legal title to the second note and of the F. mortgage, which, the first note being satisfied by the foreclosure against S., secured only that note, was not yet in B., because his right of subrogation as to that note had not become perfect, and that his foreclosure of that mortgage was void.

This action was brought in the district court for Dakota county against the administrator, the widow, and the heirs-at-law of Joseph Bissel, deceased, (the defendant Seagrave Smith being the guardian *ad litem* for the infant defendants,) the plaintiff praying that a certain mortgage given by him to one Latto be declared to have been fully paid and to be no longer a lien on the mortgaged premises, that a certificate of sale of the mortgaged premises on foreclosure by advertisement be declared void, and that such certificate and the mortgage be cancelled; that plaintiff be let into possession of the mortgaged premises; that defendants account for the use and occupation of such premises, and for general relief. The action was tried by *Crosby*, J., who ordered judgment for the plaintiff, which was entered, and the defendants appealed.

*Smith & Hale,* for appellants.

*F. F. Wilde* and *J. N. Searles,* for respondent.

GILFILLAN, C. J. On April 16, 1868, one Steinhauer, as principal, and Joseph Bissel and plaintiff as cosureties, executed to one Latto two promissory notes of five hundred dollars each, with interest at twelve per cent. per annum, one payable October 1, 1869, the other October 1, 1870, and, to secure their payment, Steinhauer executed to Latto a mortgage upon forty acres of land belonging to him, and plaintiff executed a mortgage to Latto upon another forty acres of land belonging to him. Each mortgage contained the usual power, and was duly recorded. The first of these notes having fallen due, Latto, on December 16, 1869, recovered judgment against Joseph Bissel and plaintiff for the amount then due on that note and costs, amounting to $529.57. No execution was issued on this judgment, and, on December 28, 1869, Latto, for a valuable consideration paid him by Bissel, released and discharged it. On the same day, Joseph Bissel, without any request or assent of plaintiff, (further than is evidenced by their execution of the notes as cosureties,) paid to Latto the full amount of the indebtedness secured by the notes and mortgages, and, in consideration thereof, Latto, without the knowledge of the plaintiff, assigned the mortgages and debts secured by them to Joseph Bissel, and the assignment thereof was duly recorded. On April 21, 1870, Joseph Bissel, as assignee of the mortgages, foreclosed each of them under the power of sale contained in it, and at the sales became the purchaser, and received the proper certificates of sale. The property covered by the Steinhauer mortgage was purchased by Bissel at the sum of $675.50—considerably more than was due on the first debt or judgment. From the order in which the foreclosures are stated by the court below, we assume—and defendants in their points admit it to be the fact —that this mortgage was foreclosed first. Bissel then proceeded to sell the plaintiff's forty acres under the mortgage executed by him, and became the purchaser at such sale. It is the validity of this latter foreclosure, and the standing of plaintiff's mortgage, which this action involves.

That as between Bissel and Steinhauer the debt represented by the first note was not extinguished by Bissel paying it, will appear presently; and consequently, so far as the case shows, he had the right to foreclose Steinhauer's mortgage to satisfy that debt. The foreclosure satisfied it, leaving the second note and the mortgage of plaintiff as security for it. As this note is stated by the court below, the interest was not payable till the principal should become due,—to wit, on October 1, 1870—so that, the first note having been satisfied by the Steinhauer foreclosure, there was nothing due at the date of the foreclosure against plaintiff, April 21, 1870, upon the debt for which his mortgage remained security. This is sufficient to avoid the foreclosure.

The foreclosure was void for another reason, which will be apparent when we consider the status and rights of the parties with respect to the mortgages and the debts they were given to secure. It is necessary for us to do this, because the defendants complain that the judgment of the court below is not only erroneous in adjudging the foreclosure to be void, but also in adjudging that the mortgage by plaintiff is paid, and no longer a lien on the premises, and directing it to be cancelled, and in adjudging to be void the assignment from Latto to Bissel. The only ground upon which the mortgage is adjudged paid, and the assignment by Latto to Bissel void, is the payment, by the latter to the former, of the amount of the debts, at the time of the assignment of the debts and mortgages, and of the entry of satisfaction of the judgment. Ordinarily the payment by one joint debtor extinguishes the debt, and discharges all collaterals, so that there is nothing which can pass through an assignment from the creditor. This is the case, except where, as a consequence of the payment, the right of subrogation or substitution arises, to prevent the extinction of the debt and securities, and to keep them alive for the benefit of the party paying. That a surety paying the debt is entitled to be subrogated, as between him and the principal debtor, to all securities for the debt is, both in

England and America, an elementary principle of equity jurisprudence. And although it is held otherwise in England, in America it is too well settled to require citation of authorities, that, as between them, payment by the surety does not extinguish the debt, but is, unless a contrary intent appears, to be treated in equity as a purchase rather than a payment of the debt, vesting it, with its collaterals, so far as necessary for his indemnity, in the surety, precisely as it was in the creditor. And where it is necessary for the protection of the paying surety, equity will compel the creditor to vest the legal title in him, by assigning the debt and securities to him. When the right of subrogation exists, it is of course competent for the creditor to make the assignment voluntarily; and when such assignment is made, the surety may use the debt and securities as assignee, and through them indemnify himself for what he has paid as surety. *Folsom* v. *Carli*, 5 Minn. 264 (333.)

The same principles which support this doctrine are equally applicable between sureties entitled to contribution. The right of subrogation does not depend on contract, but on principles of natural equity. It is just and equitable that, in the peculiar relation of suretyship, whatever is done to assure payment of the debt should enure to the security of all the parties interested, except the one ultimately liable for it, and should be enforceable in favor of the party entitled to receive the debt, and also in favor of a party paying the creditor, for the proportion which the party giving the security ought to pay of the debt. As between cosureties they ought ordinarily, on default of the principal debtor, to pay in equal proportions. If a surety takes security for the debt, it enures not only to his protection, but also to that of the creditor; (*Phillips* v. *Thompson*, 2 John. Ch. 418; *Moses* v. *Murgatroyd*, 1 John. Ch. 119; *New London Bank* v. *Lee*, 11 Conn. 112; *Homer* v. *Savings Bank*, 7 Conn. 478; *Eastman* v. *Foster*, 8 Met. 19;) and also to that of his cosureties. *Hinsdill* v. *Murray*, 6 Vt. 136; *Brown* v. *Ray*, 18 N. H. 102; *Elwood* v. *Deifendorf*, 5 Barb.

399; *Gregory* v. *Murrell*, 2 Ired. Eq. 233. In *Lidderdale* v. *Robinson*, 2 Brock. 159, Chief Justice Marshall stated the rule: "This principle of substitution is completely established in the books, and, being established, it must apply to all persons who are parties to the security, so far as is equitable." And that it applies in favor of one surety who has paid more than his proportion of the debt, to enforce contribution out of security given by a cosurety, is fully affirmed in *Cuyler* v. *Ensworth*, 6 Paige, 32; *Cheesebrough* v. *Millard*, 1 John. Ch. 408; *Scribner* v. *Hickok*, 4 John. Ch. 531; *Croft* v. *Moore*, 9 Watts, 451; *Hess' Estate*, 69 Pa. St. 272; *Burrows* v. *Adm'x of Carnes*, 1 Dessau. 409; *Lidderdale* v. *Robinson*, 2 Brock. 159; s. c. 12 Wheat. 594, and is to be regarded as settled doctrine.

As we have stated, where a joint debtor who is a surety pays the debt, the equitable title to the debt and securities vests in him through the doctrine of subrogation, and this equitable title gives life and validity to an assignment purporting to pass the legal title. That is, where the doctrines of equity preserve the debt and securities from extinction, and vest the equitable title in the surety, it is competent for the parties to change the equitable into a legal title. On no other principle can a debt be transferred by the creditor to one of the joint debtors. The assignment of the debts and mortgages in this case depends for its validity upon Bissel's right of subrogation upon paying the amount to Latto. As to the first of the notes, and the mortgages so far as they secured that note, the right was perfect, for the debt was due, and the principal debtor was in default, and upon paying it, an assignment of it by Latto to Bissel would be at once operative. It was not so with the second note. That debt was not due. The principle of subrogation is, that one who has been compelled to pay a debt which ought to have been paid by another, is entitled to a cession of all the remedies which the creditor possessed against that other. *McCormick* v. *Irwin*, 35 Pa. St. 111. A merely voluntary payment does not entitle one to subrogation; but one who pays where legally

liable is not a volunteer. In this case, at the time of the assignment, and also at the time of the foreclosure, the second debt was not due. As to it, the principal debtor had made no default, and Bissel was not under any legal liability to pay it then. A payment at that time did not at once entitle him to subrogation against his codebtors, as to whom the debt was not then payable; so that as to the second note, there was, at the date of the assignment and of the foreclosure, no perfect right of subrogation, or equitable title, to make the assignment operative to pass the legal title to Bissel. Against plaintiff the title could vest in him only for the purpose of compelling contribution, and only when he was entitled to contribution. But he could not be entitled to contribution at the date of the foreclosure, for the debt was not due. Upon this ground, that at the date of the foreclosure, the legal title to the second note—the only debt remaining after the sale of Steinhauer's land—was not in Bissel, and consequently the legal title to the mortgage of plaintiff was not in him, the foreclosure against plaintiff was void. In analogy to those cases in which equity, where a surety pays the debt, treats the creditor, or party holding the security, as trustee of the legal title for the surety paying, and such title as still subsisting for that purpose, we think the payment of the amount of the second note by Bissel to Latto did not extinguish the note; and as the assignment could not then operate to pass the legal title to Bissel, Latto held the title to the note as trustee for Bissel, until his right of subrogation arose and became perfect by the debt falling due and the default of the principal; and that, as soon as such right of subrogation arose, the assignment became operative to pass the legal title.

From these views it follows that the court below was right in adjudging the foreclosure of the mortgage executed by plaintiff, and the certificate of sale executed thereon, to be void, but in error in adjudging the second note and the mortgage executed by plaintiff paid, and cancelling and discharg-

ing the same, and, also, in adjudging the assignment from Latto to Bissel to be void; and in such particulars the judgment must be reversed. Also, as the plaintiff's counsel, in their brief, offer to release the defendant Seagrave Smith from the judgment for costs, to avoid any misunderstanding as to the judgment being double, as it appears to be, the judgment, so far as it adjudges costs against him, will be reversed.