## In re NICKERSON.

### (District Court, D. Massachusetts. July 8, 1902.)

#### No. 5,514.

1. BANKRUPTCY—PROVABLE DEBTS—NOTES PAID BY SURETY.

A testatrix by her will divided her residuary estate equally between her daughters, providing that in case either should be indebted to her upon any liability, whether absolute or contingent, the amount of such liability should be deducted from her share of the estate. The will further provided that, if the husband of either daughter should be indebted to testatrix, such indebtedness must be paid to her executor before his wife should be entitled to her share of the estate. At the time of testatrix's death, the husband of one daughter was indebted to her for money borrowed by him for which he and his wife had given their joint notes, and the wife was also indebted on notes of her own. In settlement of the estate, the executor turned over to her all of such notes as part of her share, with the consent of all parties in interest, and the husband subsequently paid some of his notes. *Held*, that the will evidenced no intention on the part of testatrix, to benefit her daughters' husbands, but clearly contemplated payment by them of any indebtedness to her estate, and that the transaction by which the wife of one received his notes was equivalent to her payment of them with her own money, which gave her the right by subrogation to enforce them against him, or to prove them against his estate in bankruptcy.

2. SAME—PAYMENT OF DEBT BY WIFE AS SURETY—RIGHT OF SUBROGATION.

The law of Massachusetts, which holds contracts between husband and wife to be unenforceable either at law or in equity, does not prevent a wife who has signed notes with her husband as a joint maker, but who is in fact a surety thereon, from proving the notes against the estate of her husband in bankruptcy, where she has paid the same with her own money; her right in such case not being dependent upon the contract with her husband, but upon the equities arising out of the transaction by which she is subrogated to the rights of the creditor.

In Bankruptcy. On review of decision of referee disallowing claim.

Alfred W. Putnam, for trustee.

Johnson, Clapp & Underwood, for creditors.

LOWELL, District Judge. The voluntary petition in this case was filed December 10, 1901. Mrs. Nickerson, the wife of the bankrupt, was the daughter of Mrs. Langmaid. Mrs. Langmaid had lent money to the bankrupt, for which he and his wife had given Mrs. Langmaid joint and several notes, some of which notes the bankrupt's daughters now seek to prove against his estate. Mrs. Nickerson was also indebted to her mother for money lent directly by the latter to the former, which last indebtedness was represented by Mrs. Nickerson's separate notes. Mrs. Langmaid died October 22, 1896. Her will contained the following clauses:

"9. I bequeath all the rest and residue of my personal estate to my three daughters, to be divided equally among them, to have and to hold absolutely share and share alike; and if any of them die before my decease, leaving children, then the share or shares which would have been taken by such daughters, had they lived, shall be divided equally among all the children left by them, and living at the time of my death."

"14. If, at my death, any of the beneficiaries designated in this will should be indebted to me upon any liability of whatever nature, whether absolute

or contingent, then the amount of all such indebtedness shall be deducted from the share of said beneficiaries before their taking any benefit under this will; and if the husband or husbands of either or any of my said beneficiaries should be indebted to me at my death, then the amount of such indebtedness must be paid to my executor before such beneficiaries shall become entitled to partake of any benefit under this will."

Mrs. Langmaid had two other married daughters living at her death, both indebted to her. The husband of one daughter was also indebted to Mrs. Langmaid upon joint and several notes given her by himself and his wife. After payment of the debts of the estate, Mrs. Langmaid's executor calculated the value of all the assets, including the notes of the daughters and of the daughters' husbands. The notes of the bankrupt and his wife were figured and treated as shown in the following account:

Notes of Georgiana P. Nickerson, Made up with Interest at 4% to the 1st of July, 1897.

| | | | | |
|---|---|---|---|---|
| July 12, 1895, | $1,225 00 | int. paid to Jan. 12, '96, 1/5/19 | $ 72 00 |
| Jan. 27, 1896, | 675 00 | 1/5 / 4 | 38 55 |
| Feb. 28, 1896, | 500 00 | 1/4 / 3 | 26 84 |
| | $2,400 00 | | $137 39 |
| | 137 39 | | |
| Total.. | $2,537 39 | | |

Notes of John F. Nickerson, Made up with Interest at 6% to the 1st of July, 1897.

| | | | | | |
|---|---|---|---|---|---|
| Aug. 2, 1895, | $ 1,000 00 | int. paid to Feb. 2, '96, 1/4/29 | $ 84 83 |
| Dec. 6, 1895, | 5,000 00 | do June 6, '96, 1/0/25 | 320 84 |
| Dec.31, 1895, | 10,000 00 | do June 30. '96, 1/0 / 1 | 601 67 |
| Jan. 2, 1896, | 1,000 00 | do July 2, '96, 0/11/29 | 59 83 |
| Mch. 2, 1896, | 1,000 00 | do 1/3/29 | 79 83 |
| | $18,000 00 | | $1,147 00 |
| | 1,147 00 | | |
| | $19,147 00 | | |

Georgiana P. Nickerson, notes and interest...... $ 2,537 39
John F. Nickerson, do ...... 19,147 00

Total ...... $21,684 39

The total value of the estate, including all notes outstanding, was divided into thirds, each third representing a daughter's share. In the executor's final account, the transaction was set forth as follows:

"Payment to Mrs. Nickerson of her share of the estate, of $————."

—Under which were the following items:

To Georgiana P. Nickerson, her notes and interest to July 1st, 1897 ...... $ 2,537 39
Notes of her husband, John F. Nickerson, and interest to July 1st, 1897 ...... 19,147 00

Total ...... $21,684 39

Then followed a list of other securities, which were turned over to Mrs. Nickerson, and were entered in the same manner, with their values set against them. The total value of these securities, including the notes above referred to, was figured to be the value of Mrs. Nicker--

son's share of the estate. The same method was pursued by the executor in the cases of the other two daughters. The executor delivered to Mrs. Nickerson, at the time of the settlement of the estate, the securities so representing her share, including the notes in question. This settlement was made by Mrs. Langmaid's executor with the knowledge and approval of all parties interested in the estate, and was assented to by them. Mr. Nickerson made no actual payment on his debt or on these notes, either to Mrs. Langmaid or to Mrs. Nickerson, and no son-in-law of Mrs. Langmaid in fact paid up his note in the settlement which was made. The notes here in question remained in the possession of Mrs. Nickerson until her death. Mrs. Nickerson died March 15, 1899. She bequeathed all her personal property to her daughters, the petitioners in this case. Her estate was duly settled, and all the property, including the notes involved in this proceeding, was transferred by her executors to her daughters. The notes for $18,000 remained in the daughters' possession until April 22, 1901, when notes for $6,000 were delivered to the bankrupt upon his paying that sum to the daughters. The remaining notes are now in their possession, and they seek to prove them.

The first question before the court concerns the intent of Mrs. Langmaid as manifested in article 14 of her will. That Mrs. Nickerson's liability was dealt with, in the first clause of that article, is plain. Whether that liability was absolute or contingent, it was, in some sense, to be deducted from Mrs. Nickerson's share. This has been done. By reason of the notes, Mrs. Nickerson's share of Mrs. Langmaid's estate has been lessened, and her liability to the estate has ceased. The second clause of article 14 manifests no intention to benefit Mrs. Langmaid's sons-in-law. To release to them their debts was the last thing Mrs. Langmaid wished to do. As they might be indebted to her by obligations which did not bind their wives, and as she had not provided in the first clause for deducting such obligations from her daughters' shares, the second clause may have been intended to meet this contingency by providing that no daughter should get her share until her husband's liability was in some way disposed of. Mrs. Langmaid did not intend that one of her daughters should be injured by the insolvency of another daughter's husband, but her will indicates no desire that, as between wife and husband, the liabilities of the latter should be diminished. She wished the debts of her sons-in-law to be paid, not for their benefit, but for the benefit of her estate, and of her daughters. In Bacon v. Gassett, 13 Allen, 334, the principal liability was the wife's, the liability of the husband was only secondary. In South v. Williams, 12 Sim. 566, the intention to benefit the son-in-law was clear. Let us suppose that some friend of Mrs. Nickerson, at her instance, had bought from Mrs. Langmaid's estate the notes in question, paying their face value. So far as Mrs. Langmaid's estate was concerned, the notes would then have been paid, and nothing would have prevented Mrs. Nickerson from receiving her share of her mother's property. As soon as this share was received, including the money just paid for the notes, Mrs. Nickerson, in accordance with a previous arrangement, might have reimbursed the friend advancing the money, and might have left him the nominal holder of the notes, in

trust for her benefit. As the debt was equitably that of the bankrupt, and not that of Mrs. Nickerson, the notes might then have been enforced against the bankrupt and his estate. The actual transaction seems to have been intended as the equivalent of that just suggested, though different in form. This note does not stand otherwise than as the joint and several note of husband and wife, given to a third party for money lent to the husband, which note has been taken up from the payee by the wife with her own money. That all parties intended to keep alive Mr. Nickerson's obligation is plain. Since his wife's death, he has recognized the validity of these notes in the hands of his children by paying one or more of them. If, under the circumstances just stated, the wife or her devisees can prove in bankruptcy against the husband's estate, I see no reason why that may not be done in the case at bar, irrespective of the provisions of Mrs. Langmaid's will.

That the joint and several maker of a note, who is, in fact, a surety, and who takes up the note from the payee by paying the same in full, cannot, in his own name, maintain an action on the note itself against the other maker, is clear. That, under the circumstances stated, he can maintain an action in the name of the payee, was decided in Bank v. Claggett, 29 N. H. 292, and no case to the contrary has been cited or found. Apart from the marital relation, there is nothing to prevent proof in this case. In Woodward v. Spurr, 141 Mass. 283, 6 N. E. 521, and in Bank v. Tyndale, 176 Mass. 547, 57 N. E. 1022, 51 L. R. A. 447, it was decided that a claim arising purely out of a written contract between husband and wife cannot be enforced in equity, and in Re Talbot (D. C.) 110 Fed. 924, it was decided that such a claim cannot be proved in bankruptcy. If, therefore, Mrs. Nickerson's claim for reimbursement from her husband's estate arose purely from the contract implied by law on the part of a principal to reimburse his surety, proof of this claim must be refused. Major v. Holmes, 124 Mass. 108. But the counsel for the creditors, with great ingenuity, has suggested that a surety has a claim against his principal which does not arise out of a contract, but out of the subrogation of the surety to the claim of the principal debtor,—in this case out of the subrogation of Mrs. Nickerson and her devisees to the claim of Mrs. Langmaid. Thus, in Swire v. Redman, 1 Q. B. Div. 536, 541, it was said by Mr. Justice Blackburn, with whom Lord Chief Justice Cockburn concurred:

"But where the two who become liable for a debt are not joint principal debtors, but from the beginning one of them is a principal and the other a surety, the case is different. The relation of principal and surety gives to the surety certain rights. Amongst others, the surety has a right at any time to apply to the creditor, and pay him off, and then (on giving proper indemnity for costs) to sue the principal in the creditor's name. We are not aware of any instance in which a surety ever in practice exercised this right; certainly, the cases in which a surety uses it must be very rare. Still, the surety has his right."

The right of subrogation does not arise from contract. One surety is entitled to subrogation as against his co-surety even when they are not bound by the same instrument, and are ignorant of each other's existence. Dering v. Earl of Winchelsea, 1 White & T. Lead. Cas.

Eq. 100. Out of the relations created by the subrogation there may arise, indeed, an implied contract, which can be sued on at law. The subrogation, however, does not arise from the implied contract, but vice versa. Harris, Subr. § 1. So, where one of two sureties on a specialty pays more than his share, he is entitled in equity to rank as a specialty creditor of his co-surety, and is not limited to rank as a mere general creditor upon an implied contract. Lidderdale v. Robinson, 12 Wheat. 594, 6 L. Ed. 740; Id., Fed. Cas. No. 8,337, 2 Brock. 159. If the right of subrogation be thus effective against a co-surety, it cannot be less so against the principal himself. In Guild v. Butler, 127 Mass. 386, 389, it was said by Chief Justice Gray:

"As the right of the surety does not depend upon the contract, but upon the equities arising out of the circumstances of the case, the creditor is affected by knowledge of the true relation of the debtors, acquired at any time before he does the act which alters the position of the surety; and one who makes a promissory note for the accommodation of another is a surety, within the rule."

This last statement must be taken to determine that the remark made by the same learned judge in Major v. Holmes, 124 Mass. 108, 109, viz., that in a case like this no contract of indemnity could be made or implied as between husband and wife, was not intended to deny the wife's right of subrogation. Inasmuch, therefore, as Mrs. Nickerson, by her transaction with her mother's executors, acquired a right of subrogation available against her husband, which subrogation did not arise from any contract with her husband, but from an equitable right against her mother, it appears to me that her legatees have a claim in bankruptcy which they can prove against her husband's estate. The rule of law in Massachusetts, that a husband may not contract with his wife, is not construed to prevent the enforcement against his estate of all rights in their nature contractual, provided these rights did not originate in a contract made directly between the couple. Butler v. Ives, 139 Mass. 202, 29 N. E. 654.

The judgment of the referee is reversed, and the claim allowed.