# R. E. MORRIS AND OTHERS v. DONALD N. BLOSSOM AND OTHERS.[1]

June 27, 1930.

No. 27,927.

*R. E. Plankerton,* for appellant R. E. Morris.

*J. J. Truax* and *J. B. Barker,* pro se as appealing administrators of the estate of Edward M. Foster.

*H. W. Volk,* for respondent Dorothy Blossom.

*D. F. Nordstrom,* for respondent A. J. Veigel.

[1]Reported in 231 N. W. 397.

TAYLOR, C.

Appeal by plaintiffs from an order denying their motion for a new trial.

The action is in the nature of a creditor's bill to reach property formerly belonging to Edward M. Foster, deceased. It was originally brought by a simple contract creditor, but the administrators of Foster's estate were subsequently joined as plaintiffs. The right to maintain the action is not questioned. The evidence is voluminous and gives the details of numerous transactions. The findings cover 17 printed pages and are full and definite. An examination of the record satisfies us that they are all sustained by the evidence. We shall merely refer to a few of the salient facts without giving the details of particular transactions and with little or no discussion of the evidence relating to particular findings. The controversy is between the plaintiffs and the defendant Dorothy Blossom. She is the daughter of Edward M. Foster, deceased, and was married to the defendant Donald Blossom after her father's death. She will be referred to as Dorothy hereafter.

On April 21, 1929, the court made findings and an order for judgment which were filed on April 22, 1929. On May 16, 1929, on motion of defendant Dorothy, the court made an order vacating the findings and order of April 21, 1929, and opening the case for the presentation of further evidence. Thereafter both parties presented further evidence, and on July 1, 1929, the court made and filed new findings and an order for judgment in place of those previously set aside. Thereafter both parties made motions to amend these findings, which motions were denied except in certain minor particulars. Plaintiffs insist that the court erred in setting aside the original findings and order and opening the case for further evidence. To do so was within the discretion of the trial court. Smith v. Kurtzenacker, 147 Minn. 398, 180 N. W. 243.

Four parcels of real estate are involved, which for convenience will be designated as the Lyndale avenue property, the Hennepin avenue property, the Glen Lake property, and the Minnetonka property. The court made findings to the effect that defendant Dorothy

was the owner in fee of the Lyndale avenue property; that the other three parcels had been conveyed to the Continental State Bank as security for an indebtedness owed by Foster to the bank for which indebtedness defendant Dorothy was an accommodation surety; and that she had paid in full the balance due on this indebtedness and was entitled to be subrogated to the rights of the bank in the security to the extent of the amount so paid.

We will take up first the matter of the Lyndale avenue property. Orel Foster, Dorothy's mother, was the owner of this property and also of certain personal property. She died intestate in 1914 leaving her husband and Dorothy as her sole heirs. Under the statute an undivided two-thirds of this property passed to Dorothy and an undivided one-third to her father. She was then 11 years old and continued to reside with her father. He was appointed administrator of the mother's estate. He proceeded to handle it as if it were his own property and appropriated the personal property and the rentals from the real estate to his own use. In July, 1920, he conveyed his one-third interest in the Lyndale avenue property to Dorothy, then 17 years of age, by a deed which was duly recorded. He was responsible to Dorothy for her share of the personal property and rentals which he had appropriated. Whether this conveyance was made for the purpose of satisfying that obligation does not directly appear, but he never made any other payment or settlement therefor. In its final decree the probate court assigned an undivided two-thirds of both the real estate and the personal property to Dorothy and an undivided one-third thereof to her father, and fixed the value of the personal property so assigned at the sum of $11,805. The plaintiffs claim that Foster made the conveyance to Dorothy for the purpose of concealing his interest in the property from creditors.

He had operated on an extensive scale in oil lands in Texas and other states, and a few months before making this conveyance a judgment for a large amount had been recovered against him in Texas. But this judgment had been immediately satisfied and did not render him insolvent although it swept away nearly all of his

property. The evidence fails to show that he owed any debts at the time of the conveyance. He became ill in September, 1927, and died June 5, 1928. Claims aggregating about $10,000 were filed against his estate, but the earliest of them did not arise until a year after the conveyance in question. The finding to the effect that the conveyance was not made or received for the purpose of defrauding creditors and that Dorothy became the absolute owner of the property is amply sustained by the evidence.

At the same time that Foster conveyed the Lyndale avenue property to Dorothy he conveyed the other three parcels to Nellie McNeill, with the understanding that if he repaid the money and notes received for them she would reconvey them to him or as he directed. In May, 1922, having been repaid, she executed and delivered to Foster a quitclaim deed of the property with the name of the grantee left blank. In July, 1922, Foster inserted the name of the Continental State Bank as grantee in this deed and delivered it to the bank as collateral security for a loan of $14,000 which he obtained from the bank. The promissory note which he gave for the loan refers to this deed and provides that it shall be security for any and all liabilities to the bank or the holder of the note then existing or thereafter arising. Dorothy signed this note, and the court finds on sufficient evidence that she signed it solely for the accommodation of her father. For present purposes it is not necessary to follow the indebtedness for which the deed was held as collateral security through the various changes which subsequently took place therein. It is sufficient to say that Dorothy signed the subsequent notes representing such indebtedness and was liable therefor; and that the court found on sufficient evidence that her liability therefor was incurred solely as accommodation surety for her father. On January 15, 1924, she paid $13,294.16 on this indebtedness out of the proceeds of a mortgage placed on her Lyndale avenue property; and on January 24, 1928, she paid the remainder of this indebtedness in the sum of $6,517.10 out of the proceeds of the sale of her Lyndale avenue property. . The court so found, and the making of the payments, the source from which they

were obtained and the amounts thereof are not questioned. The court found that the deed to the bank was in intent and legal effect a mortgage; and that defendant Dorothy became subrogated to the lien thereof as security for the payments made by her; and directed that the property be sold and that the proceeds over and above the expenses of the sale be applied upon her claim, and that the surplus, if any, be turned over to the administrators of the estate.

Plaintiffs claim that the conveyance to Nellie McNeill was made to conceal the property from creditors and that the subsequent conveyance to the bank was made to continue such concealment. The court found that the conveyance to Nellie McNeill was made in part for the purpose of concealing the property and in part for the consideration received from her. As none of the present indebtedness existed at that time and she reconveyed the property six years before the commencement of this action, the purpose of Foster in making the conveyance to her is not now important, although it might properly be taken into consideration in determining his purpose in the later transactions. The court found that the deed was given to the bank as collateral security for the loan then obtained. It did not find that the security was put in the form of a deed for the purpose of concealing the property, and the evidence does not require such a finding. Even if Foster had such a purpose in mind, the record fails to show that either the bank or Dorothy had any knowledge of it or acted otherwise than in absolute good faith.

Plaintiffs offered exhibit V in evidence as bearing upon their claim that Dorothy received the benefit of at least a part of the original loan and therefore was not a mere accommodation surety. They urge the exclusion of this exhibit as error. It is an unsigned memorandum in the handwriting of Foster of which no one had any knowledge until it was found among his papers after his death. It notes the loan and the purchase of an interest in a tract of land. Possibly it might have been admissible against Foster or the administrators of his estate, but it was clearly not admissible against Dorothy.

Dorothy was without business experience and had but little knowledge of her father's transactions or of the transactions involving her own property and property rights. Her father had always assumed to take care of all business matters, and she simply signed whatever papers he presented for her signature without examining them or making any inquiry concerning them. After his death a mass of papers was found and turned over to her attorney. Her attorney directed and conducted the subsequent transactions and proceedings on her part. He was able to obtain only scant information from her as to the condition in which either her own affairs or those of her father had been left, and proceeded to spell it out from the records and papers as best he could.

The Continental State Bank became insolvent, and the commissioner of banks proceeded to wind up its affairs. In October, 1928, Dorothy's attorney, stating that the indebtedness to the bank had been paid in full, requested the commissioner of banks to convey the security to her. As the deed to the bank was from Nellie McNeill, the commissioner was of the opinion that the reconveyance should be made to her. This was satisfactory, and in November, 1928, the commissioner, having obtained authority from the district court to do so, executed a quitclaim deed of the property to Nellie McNeill. She in turn executed a quitclaim deed of it to Dorothy.

The failure to procure a reconveyance of the property to the father when the final payment was made to the bank and the failure to report this property to the probate court as a part of his estate and the taking of the deeds which passed the title to Dorothy are urged as constituting a fraudulent concealment of the property as to creditors and as showing that Dorothy did not come into court with "clean hands" and therefore is not entitled to relief in a court of equity. The court held that she was entitled to be subrogated to the lien on the property; but, although exonerating both Dorothy and her attorney from any intentional or conscious fraud, expressed the opinion that the matters mentioned constituted a constructive fraud on creditors. But also expressed the further opinion that as Dorothy had not been involved "in wrongful conduct of any sort

antedating her father's death" and his debts had been paid with her money, she became subrogated to the security when the last payment was made, and that her conduct after her right had vested did not bar her from enforcing that right, citing Barnes v. Barnes, 282 Ill. 593, 118 N. E. 1004, 4 A. L. R. 4. The court held however that the administrators of the father's estate were entitled to a conveyance of the property from the bank, and directed the defendant commissioner of banks to execute to them a quitclaim deed thereof subject to the lien of Dorothy. The deeds to Nellie McNeill and from her to Dorothy had not been recorded, and the court directed that Dorothy surrender them to the court for cancelation. While we must not be understood as affirming or approving the propriety of these requirements, yet, as neither Dorothy nor the commissioner of banks has appealed, and as the property is to be sold under the decree and the sale will pass the title to the purchaser whether held by Dorothy or the administrators, we are not in position to interfere with or change the above requirements.

We see nothing in the matters on which the claim of inequitable conduct is predicated which would warrant a finding that Dorothy did not come into court with "clean hands." The claim is based principally on the fact that Dorothy through her attorney procured a conveyance of the property to herself instead of listing it in the probate court and having it conveyed to the representatives of the estate. Wherein she violated any duty imposed upon her is not clear. Having paid the indebtedness to the bank for which she was liable as surety, she became subrogated to the rights of the bank in the security held for that indebtedness and was entitled to have the security legally transferred to her. Felton v. Bissel, 25 Minn. 15; Conner v. Howe, 35 Minn. 518, 29 N. W. 314; Knoblauch v. Foglesong, 37 Minn. 320, 33 N. W. 865; Barton v. Moore, 45 Minn. 98, 47 N. W. 460; Leonard v. Swanson, 58 Minn. 231, 59 N. W. 1009; Lumbermen's Ins. Co. v. Sprague, 59 Minn. 208, 60 N. W. 1101; Rogers v. Hedemark, 70 Minn. 441, 73 N. W. 252. See also Benson v. Saffert-Gugisberg C. C. Co. 161 Minn. 269, 201 N. W. 424.

The security held by the bank was in the form of a deed conveying to it the legal title to the property, and to transfer the security to Dorothy it was necessary for the bank to convey the legal title to her. She was entitled to such a conveyance, and in procuring it she merely exercised a right which the law gave her. The conveyance however simply placed her in the shoes of the bank, with the same right to enforce the lien against the property which the bank had had. As the decree directed by the order for judgment will secure the enforcement of this lien it accomplishes the correct result.

We see no ground for the suggestion that Dorothy is chargeable with laches. See Conner v. Howe, 35 Minn. 518, 29 N. W. 314.

The properties in question had been sold for taxes. After her father's death, Dorothy, through her attorney, paid the amounts delinquent and obtained assignments of the certificates from the several purchasers to herself or her husband. But we have no occasion to consider these tax certificates on this appeal, for Dorothy is awarded nothing on account of them.

We reach the conclusion that the order appealed from should be and therefore it is affirmed.