E. L. NIPPOLT AND ANOTHER v. FARMERS & MERCHANTS STATE BANK OF SPRINGFIELD.[1]

June 17, 1932.

No. 28,607.

[1]Reported in 243 N. W. 136.

*Streissguth & Fordyce,* for appellant.
*Somsen, Dempsey & Flor,* for respondents.

LORING, J.

In an action upon a promissory note for $8,000, the plaintiffs prevailed on a trial before the court without a jury. The defendant's motion for a new trial was denied, and it has appealed.

Peter Thorsten was the owner of a quarter section of land in Redwood county which in June, 1919, he sold to Reinertson and Anderson on a contract for deed for a consideration of $20,000. This contract for deed provided that Thorsten might put a mortgage upon the premises and that Reinertson and Anderson would assume it. Accordingly Thorsten mortgaged the land to the State Bank of Springfield for $8,000. The bank immediately assigned to Isackson, one of its stockholders. The following year Thorsten sold his vendor's interest in the contract with Reinertson and Anderson to the State Bank of Springfield. He also made a conveyance to that bank subject to the contract for deed.

In July, 1920, Reinertson and Anderson by contract for deed sold the premises to Ebert Meyer for $26,800, on deferred payments. By the terms of his contract with Reinertson and Anderson, Meyer was to take over their contract with Thorsten when he had paid out Reinertson and Anderson for their equity. Meyer became indebted to this defendant, which will hereinafter be referred to as the Farmers bank, and to it he assigned his contract with Reinertson and Anderson as security. In the fall of 1922 Meyer was unable to meet his obligations to Reinertson and Anderson, and they were threatening cancelation of his contract. It was then arranged that Anna Meyer, his wife, should give the Farmers bank security on some property which she had inherited. Reinertson and Ander-

son transferred to the Farmers bank their contract for deed in consideration of the payment of $4,000 (this amounted to a discount of approximately $4,000 on the balance due to them from Meyer) and a new contract for deed was made from the Farmers bank to Anna Meyer. The consideration in this last contract was the amount which the Meyers then owed the Farmers bank plus the balance due the vendor under the original contract for deed to Thorsten from Reinertson and Anderson. There was $8,000 of indebtedness represented by the mortgage and about $8,000 more due on the vendor's contract which had been assigned by Thorsten to the State Bank of Springfield. The Farmers bank refused to enter into this arrangement unless it could obtain an extension of the first mortgage from Isackson, and this was arranged through the State Bank of Springfield so that the $8,000 on the mortgage and the $8,000 on the contract became due together in 1930. By the terms of the extension agreement the Farmers bank obligated itself to pay the first mortgage when it became due. There was also an oral arrangement between Reinertson and Anderson and the Farmers bank by which the bank agreed to pay both the mortgage and the balance due on the vendor's contract for deed.

In her contract of purchase Anna Meyer agreed that she would pay the sum of $16,000 on the first day of January, 1930, "according to the terms and subject to the conditions of that certain contract for deed, dated June 18, 1919, by and between Peter Thorsten and wife and Joseph L. Reinertson and William C. Anderson." It was also provided that all such payments should be made "to the party of the first part herein," that is, to the Farmers bank.

William G. Frank acquired the Isackson mortgage by assignment and brought suit against the Farmers bank on the extension agreement after the debt had matured. Frank died after the commencement of the action, and the plaintiffs as his executors were substituted as plaintiffs.

The trial court found that there was no merger between the interests of the State bank and of Frank. We consider that its finding in this regard is sustained by the evidence.

The Farmers bank claims that its purchase of the Reinertson and Anderson contract for deed covering the Thorsten farm was illegal and void. The trial court held that this arrangement by which the bank acquired this assignment by putting $4,000 cash into the transaction and assuming to pay the encumbrances amounting to $16,000 was a purchase of the equity in the land and not an assignment as security for the indebtedness which the Meyers owed it. The appellant has assigned this finding as error on the ground that it is not sustained by the evidence. We are of the opinion that the evidence does not sustain a finding that this was an outright purchase, but that it was merely a means by which the bank took security for the indebtedness which Ebert Meyer had owed it and which Anna Meyer assumed. Every angle of the transaction indicates that such was the case. Consequently it was a legal transaction, although judging by the consequences it was an improvident one. Banks may and often do lend money in order to obtain better security for past debts. Inasmuch as we view the assignment as one made for security rather than an outright purchase, the assumption of the first mortgage note by the extension agreement here involved became a means by which the bank was protecting the security and hence was not ultra vires as claimed by the appellant.

Both parties have made extended arguments and have devoted much of their briefs to the question whether if the bank is required to pay this first mortgage it is subrogated to the rights of the mortgagee, and whether the land is the primary fund from which it may as such subrogee enforce the mortgage and reimburse itself for the money paid to satisfy it. It is perfectly obvious that as to Anna Meyer, the subsequent assuming vendee, the defendant became a surety and Anna Meyer a principal; and as to her the mortgage may be enforced by defendant, the land being the primary fund. This puts the defendant bank in a position to demand an assignment of the mortgage and a transfer of the note to it. The court should so decree even though Anna Meyer is not a party. Knoblauch v. Foglesong, 37 Minn. 320, 33 N. W. 865; Morris v. Blossom, 181 Minn. 71, 77, 231 N. W. 397. But in this action the State bank,

which now holds the vendor's contract, is not a party, and the right of the defendant to subrogation as against it is not so clear that a court should express an opinion which in the nature of the case cannot be binding upon that bank. The defendant's right to subrogation as against Anna Meyer is sufficient to require an assignment of the note and mortgage to it upon their payment. We therefore hold that it was improper for the trial court to deny to defendant the assignment of the note and mortgage upon payment thereof. Whether defendant's rights are paramount to those of the State bank is a question to be determined in litigation to which all interested are parties. We could make no decision here that would bind the State bank. The plaintiffs are entitled to recover the amount of their note, and the defendant upon payment thereof is entitled to an assignment of the note and mortgage.

Order reversed and case remanded with directions for further proceedings in accordance with this opinion.

HOLT, J. (dissenting).

I dissent. Subrogation is granted on equitable principles and should not be decreed unless all persons affected are made parties to the suit. It clearly appears that the State Bank of Springfield is vitally interested in the payment of the mortgage securing the $8,000 note in suit. This mortgage the defendant bank, by the extension agreement obtained from plaintiff, assumed and agreed to pay unconditionally. To determine whether defendant is equitably entitled to subrogation to the mortgage on payment of the mortgage debt, the circumstances under which it was given must be taken into account.

One Thorsten owned the land when he agreed to sell it to Reinertson and Anderson for $20,000. To accommodate the vendees, who evidently were unable then to pay the whole purchase price, the contract provided that the vendor should place a mortgage not to exceed $10,000 on the land, which mortgage the vendees agreed to assume and pay as part of the purchase price of $20,000. This mortgage was the result. As between the vendor and vendees it is clear that the latter, upon paying the mortgage debt, should not

have an assignment of the mortgage. As between them the land may not be resorted to to pay the $8,000, for if that is done the vendor will not obtain that much of the purchase price which the vendees agreed to pay. The State Bank of Springfield has succeeded to all of the vendor's rights in the land and contract. The defendant bank derives no rights from the vendor; therefore it must have succeeded to that of the vendees only. If an assignment of the mortgage is now decreed to it and it, should attempt to foreclose, it seems to me the State Bank of Springfield could enjoin the foreclosure and compel a satisfaction of the mortgage. But assuming, as the majority opinion does, that the equities between the two banks be left for future litigation, I do not think the defendant entitled to the advantage of now having an assignment of the mortgage decreed. If defendant desired equitable relief in this action, it was incumbent on it to cause all who might be affected by such relief to be made parties. It failed to do so. The costs of this appeal should not be saddled on plaintiffs because of defendant's failure to bring in the parties affected by the equitable relief it sought. And, as above stated, in my opinion, had the State Bank of Springfield been made a party, its equity would have prevailed as against defendant, and the latter would not have been decreed an assignment of the mortgage.

DIBELL and HILTON, JJ. (dissenting).
We agree with Mr. Justice Holt.