Marjorie Congdon LeROY, a.k.a. Marjorie Congdon Caldwell, Appellant,

v.

The MARQUETTE NATIONAL BANK OF MINNEAPOLIS, Respondent,

William P. Van Evera and Thomas E. Congdon, Respondents.

No. 48577.

Supreme Court of Minnesota.

March 9, 1979.

Berman & Lazarus, Reidenberg & Eagon, Meshbesher, Singer & Spence, Minneapolis, for appellant.

Levitt, Palmer, Bowen, Bearmon & Rotman and J. Patrick McDavitt, Minneapolis, for The Marquette Nat. Bank of Minneapolis.

Johnson, Fredin, Killen, Thibodeau & Seiler and Dennis O'Toole, Duluth, for Van Evera and Congdon.

Heard before TODD, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Plaintiff Marjorie Congdon LeRoy, appealing from an order for judgment and judgment of the Hennepin County District Court, challenges the determination of the trial court that defendant trustees were entitled to take possession of and title to stock, which she had pledged as collateral for a promissory note between defendant bank and herself, upon payment of that note by defendant trustees acting in the capacity of co-makers or accommodation parties. We affirm.

On May 28, 1974, plaintiff alone executed a promissory note payable in six months to defendant Marquette National Bank (bank) for the principle sum of $345,000. The collateral for the note was 4,450 shares of Northwest Bancorporation common stock owned by plaintiff. Plaintiff's mother, Elizabeth Congdon (Congdon), contemporaneously executed a separate agreement guaranteeing payment of the note to defendant bank.

Upon plaintiff's default on the note, defendant bank commenced an action against plaintiff, Congdon, and Congdon's conservator and trustee of her assets. The matter was settled by a stipulation agreement executed by all parties on September 2, 1975.

The stipulation acknowledged that plaintiff was unable to pay her indebtedness, that the guaranty had been obtained by duress and undue influence, and that the stock was collateral for the note. Defendant bank agreed to renew the note every six months up to nine renewals, provided that, among other things, Congdon, plaintiff, and the conservator-trustees execute the note as co-makers and that the stock continue as collateral. The stipulation further provided that, in the event of Congdon's death, the balance of the indebtedness would be paid within six months by Congdon's trustees. In connection with the stipulation, plaintiff executed a warrant of attorney to confess judgment to Congdon, a promissory note to Congdon for certain amounts paid by Congdon to the bank in settlement, and an indemnity agreement in favor of Congdon for all future amounts paid by Congdon to defendant bank.

The promissory note in favor of the bank was renewed in identical form four times prior to Congdon's death on June 27, 1977. On July 26, 1977, defendant trustees notified defendant bank through counsel that the collateral should be liquidated and the proceeds used to reduce the loan.

Plaintiff commenced this action in October of 1977, seeking orders enjoining defendant bank from liquidating the stock, requiring defendant trustees to pay in full plaintiff's indebtedness on the note, and requiring defendant bank to release the stock to her.

Upon motions for summary judgment, the trial court ordered that plaintiff's complaint be dismissed, that the trustees were liable on the note, that trustees were subrogated to and had an equitable assignment in the collateral held by the bank, and that judgment be entered in favor of the trustees against plaintiff for any further sums over the value of the stock required to pay the bank.

Plaintiff appealed from the trial court's order on January 31, 1978. Judgment was entered in the district court on March 14, 1978, but no appeal was taken from the judgment within 90 days from entry. On July 6, 1978, defendant trustees notified this court of their intent to move to dismiss the appeal on July 14, 1978, on the ground that plaintiff had appealed from a non-appealable order. Thereafter, on July 11, 1978, plaintiff petitioned this court for permission to appeal from a non-appealable order pursuant to Rules of Civil Appellate Procedure, Rule 105.01, Discretionary Review, and from the judgment of the trial court.

1. We address first the question of jurisdiction, which turns on the appealability of the trial court's order from which plaintiff timely appealed. Plaintiff contends that she genuinely believed the order was appealable because it dismissed plaintiff's complaint, denied injunctive relief, and, finally and most importantly, determined the action. Defendant trustees contend that the order was not appealable, having been issued following a hearing on motions for plaintiff and defendant trustees for summary judgment. We agree with the trustees.

 Since a motion is an application for an order, the order generally will assume, for purposes of appeal, the nature of the motion to which it responds. See, Rules of Civil Procedure, Rule 7.02. The order from which this appeal is taken is an order for summary judgment in response to motions for and a hearing on summary judgment. No motions to dismiss plaintiff's complaint or for injunctive relief were before the trial court. Thus, under the rules now in effect, the order is not appealable. *Johnson & Peterson, Inc. v. Toohey*, 289 Minn. 362, 184 N.W.2d 586 (1971).

 Even though the appeal is defective, we will take jurisdiction under the Rules of Civil Appellate Procedure, Rule 102, where the facts and circumstances contributing to the defect persuade us that appellant was not inexcusably dilatory and that justice would be better served by reaching the merits of the case.[1] See, e. g., *Brekken v.*

---

1. Since the petition for discretionary review was not served within the time limited for appeal from an appealable order, Rules of Civil Appellate Procedure, Rule 105.01 does not provide a basis for review in this case.

*Holien,* 289 Minn. 95, 182 N.W.2d 717 (1971). We are convinced in this case that appellant's defective appeal arose from a genuine misconstruction of Rule 103.03 and not from inexcusable dilatoriness. Under these particular circumstances and noting that under the amended Rules of Civil Appellate Procedure, Rule 103.03(a) an order for judgment will be appealable, we will invoke Rule 102.

2. Turning to the merits of plaintiff's appeal, we consider whether the trial court erred in its determination that defendant trustees were entitled to take possession of and title to stock that had been pledged as collateral for a promissory note between defendant bank and plaintiff upon payment of that note by defendant trustees acting in the capacity of co-makers or accommodation parties.

The material facts of this case are not disputed. Our review of the summary judgment focuses on the trial court's application of the law. See, *Minneapolis, St. P. & S. S. M. R. Co. v. St. Paul M.-I. Co.,* 268 Minn. 390, 129 N.W.2d 777 (1964). Plaintiff asserts as error three determinations of the trial court: (1) that a co-maker of a renewed promissory note may be an accommodation party; (2) that the status of accommodation party had been sufficiently established by the documents before the court; and (3) that postponement of payment of a note by the guarantor was not a benefit or receipt of consideration sufficient to prevent that party from being an accommodation party. The trial court's determinations are not contrary to law.

■ It is well established in Minnesota law that a co-maker of a promissory note may be an accommodation party. *First State Bank of Kensington v. Braaten,* 207 Minn. 477, 292 N.W. 20 (1940). This principle remains unaltered by the relevant provisions of the Uniform Commercial Code, Minn.St. 336.3–415(1):

"An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it."

This provision is interpreted to allow a comaker of an instrument to be an accommodation party. See, M.S.A. 336.3–415, Minnesota Code Comment, 417.

■ Plaintiff next argues that defendants failed to prove the existence of accommodation status, noting the absence of reference to such status in the renewal and settlement documents. Under the facts of this case, the presence of terms identifying the accommodation status would seem superfluous. The purpose of identifying the accommodation status is to provide notice to subsequent takers of the instrument. See, White and Summers, Uniform Commercial Code 430 (1972). Here, the taker, defendant bank, was well aware of Congdon's original guarantor status. In fact, the existence of the guaranty agreement and the manner in which it was obtained were recited in the settlement stipulation executed by all of the parties.

■ Since the use of terms identifying the accommodation status operates for the protection of the taker, it is not conclusive evidence of the existence of a surety relationship between co-makers. Here, the fact that the settlement documents do not expressly discharge the original suretyship, but rather carefully insure the indemnification of Congdon, persuades us that the accommodation relationship continued through the renewal of the promissory note.[2] Cf. *Farmers Union Oil Company v. Fladeland,* 287 Minn. 315, 319, 178 N.W.2d 254, 257 (1970) (original accommodation party held liable on renewed note because "mere execution of a renew[ed] note evidences the same debt by a new promise and does not constitute a payment or discharge of the original note but operates only as an extension of time for payment").

2. Because we find the original suretyship not to have been discharged, we reject plaintiff's argument that only the rights and obligations set forth in the settlement documents are enforceable.

Plaintiff finally argues that Congdon and the trustees could not be accommodation parties on the renewed note because of the benefit received from postponement of liability on the original promissory note.

As we interpret Minn.St. 336.3-415(1), the accommodation status is not automatically defeated by a passing of consideration from the payee to the surety. See, M.S.A. 336.3-415, Minnesota Code Comments, 418 Uniform Commercial Code Comment, 425. There must, however, be clear evidence of an intent to sign as an accommodation party. See, *Miller's Shoes & Clothing v. Hawkins Furn. & App., Inc.*, 300 Minn. 460, 221 N.W.2d 113 (1974). Here, Congdon's intent to act as a surety on the original note is undisputed. That intent remained unaltered by the settlement, as evidenced by the execution of indemnification documents as well as the provisions for "renewal" of the original promissory note. Consequently, the trial court did not err in concluding as a matter of law that Congdon and the trustees executed the renewed note as accommodation parties.

After finding defendant trustees to be sureties,[3] the trial court properly applied the equitable principles that a surety is entitled to be subrogated to the rights of the creditor upon payment of the debt and to equitable assignment of the security. See, *Morris v. Blossom*, 181 Minn. 71, 231 N.W. 397 (1930); *Lumbermen's Ins. Co. v. Sprague*, 59 Minn. 208, 60 N.W. 1101 (1894); *Knoblauch v. Foglesong*, 37 Minn. 320, 33 N.W. 865 (1887); *Torp v. Gulseth*, 37 Minn. 135, 33 N.W. 550 (1887).

Affirmed.

---

3. An accommodation party is a surety. M.S.A. 336.3-415, Minnesota Code Comments, 416-18.