STATE OF MINNESOTA

IN SUPREME COURT

A22-1826

Court of Appeals                                    Moore, III, J.
                                Took no part, Procaccini, Hennesy, JJ.

Tokvan Ly,

              Respondent,

vs.                                                 Filed: June 12, 2024
                                                   Office of Appellate Courts

Jodi Harpstead,
Minnesota Commissioner of Human Services,

              Appellant.

_____

James P. Conway, Kevin J. Wetherille, Jaspers, Moriarty & Wetherille, P.A., Shakopee, Minnesota, for respondent.

Keith Ellison, Attorney General, Brandon Boese, Scott H. Ikeda, Assistant Attorneys General, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      An appeal is not moot where there remains a live controversy as to a part of the order on appeal or, alternatively, where a favorable decision on the merits of the appeal may afford some relief to the appellant.

2.      The independent, extra-statutory basis for appeal of an order issuing a peremptory writ of mandamus before entry of final judgment as a final order affecting a substantial right made in a special proceeding, which was first recognized in *State ex rel.*

1

*Matthews v. Webber*, 17 N.W. 339 (Minn. 1883), has been extinguished by amendment to Rule 103.03(g) of the Minnesota Rules of Civil Appellate Procedure; an order issuing a peremptory writ of mandamus is also not appealable under Rule 103.03(a) of those rules as an "irregular judgment," and our prior reliance on such a legal fiction, beginning in *State ex rel. Mortenson v. Copeland*, 77 N.W. 221 (Minn. 1898), is disclaimed and overruled.

3.      Under the supreme court's inherent authority and Rule 102 of the Minnesota Rules of Civil Appellate Procedure, the supreme court has the authority to suspend the final judgment requirement under Rule 103.03(a) of those rules, exercise jurisdiction over an otherwise defective appeal, and remand to the court of appeals to consider the merits of the appeal.

Reversed and remanded.

O P I N I O N

MOORE, III, Justice.

This case requires us to determine whether a district court's order issuing a peremptory writ of mandamus is immediately appealable, even though the district court reserved the issue of mandamus damages for later determination at trial. The respondent, Tokvan Ly, suffers from severe mental illness and was incarcerated in the Scott County Jail. The district court found Ly incompetent to face criminal proceedings and ordered him committed to the care of the appellant, Jodi Harpstead, in her official capacity as Commissioner of Human Services. The Legislature has directed that persons who are in Ly's position be prioritized for admission to state-operated treatment programs operated by the Commissioner and be admitted "within 48 hours." *See* Minn. Stat. § 253B.10,

2

subd. 1(b) (2022) (Priority Admission statute).[1]  The parties agree that the statute applies here but disagree about when the 48-hour period began to run.

Ly was not admitted within 48 hours of his commitment.  Instead, 15 days after his commitment, Ly remained in jail and was not receiving the specialized treatment needed to address his severe mental illness.  Accordingly, he filed a petition for writs of mandamus and habeas corpus in Scott County District Court alleging, among other things, that the Commissioner was failing to comply with a mandatory duty to admit him to treatment within 48 hours under the Priority Admission statute and seeking damages resulting from his delayed admission to treatment.  After expedited proceedings and over numerous and vehement objections from the Commissioner, the district court issued a peremptory writ of mandamus that determined the Commissioner's liability solely on the facts as alleged in Ly's petition, and set the issue of mandamus damages for a fact trial.  In ordering that the writ issue, the district court commanded the Commissioner to admit Ly to a state-operated

---

[1]     The Priority Admission statute requires that the Commissioner "prioritize" admission to state-operated treatment programs for patients being admitted from a jail or correctional institution who have been civilly committed or ordered confined for competency examination.  Minn. Stat. § 253B.10, subd. 1(b).  The Priority Admission statute further directs that such patients "must be admitted to a state-operated treatment program within 48 hours." *Id.*  Since the initiation of this case, the Legislature has amended the Priority Admission statute to clarify that the "48-hour rule" begins to run when a medically appropriate bed becomes available. *See* Minn. Stat. § 253B.10, subd. 1(e), *as amended by*, Act of May 24, 2023, ch. 61, art. 4, § 7.  This amendment became effective on May 25, 2023, and expires on June 30, 2025. *Id.*

A "state-operated treatment program" refers to "any state-operated program . . . developed and operated by the state and under the [Commissioner of Human Services'] control for a person who has a mental illness, developmental disability, or chemical dependency."  Minn. Stat. § 253B.02, subd. 18d (2022).  This definition includes community behavioral health hospitals and residential facilities. *Id.*

treatment program and it sua sponte imposed a monthly statewide reporting requirement upon the Commissioner related to all persons awaiting admission to state-operated treatment programs under the Priority Admission statute.

The Commissioner appealed the district court's order, contending that *State ex rel. Matthews v. Webber*, 17 N.W. 339 (Minn. 1883), permitted her to immediately appeal the order under Minn. R. Civ. App. P. 103.03(g) *before* entry of final judgment. The court of appeals disagreed and dismissed the appeal for lack of jurisdiction. For the reasons set forth below, we decline to affirm. We conclude that the basis for appeal from an order issuing a peremptory writ of mandamus under Rule 103.03(g) has been extinguished, and that appeal must instead proceed from a final judgment under Minn. R. Civ. App. P. 103.03(a). We further conclude that an order issuing a peremptory writ is not appealable under Rule 103.03(a) as a form of irregular judgment, and that the district court order currently on appeal does not satisfy the finality requirement of that rule. We nevertheless invoke our inherent authority and our authority under Minn. R. Civ. App. P. 102 to suspend the final judgment requirement of Rule 103.03(a), reverse the decision of the court of appeals, exercise jurisdiction over the Commissioner's underlying appeal, and remand to the court of appeals to consider the merits of the appeal.

**FACTS**

Ly suffers from schizoaffective disorder and has a history of serious mental health episodes requiring specialized psychiatric care. Previous episodes have resulted in psychiatric hospitalizations, residential psychiatric care placements, and at least eleven civil commitments by a judicial officer since the year 2000. Although the appeal currently

4

before us concerns questions of a purely procedural nature, we cannot lose sight of the fact that the heart of this case concerns an attempt to secure residential psychiatric treatment for Ly and stabilize his condition outside of the setting of the Scott County Jail. The district court found Ly's condition presented an "emergent and urgent" matter for judicial consideration.

On September 27, 2022, Ly was declared incompetent to proceed in three criminal cases against him by reason of mental illness under Rule 20.01 of the Minnesota Rules of Criminal Procedure. On October 21, 2022, the district court presided over civil commitment proceedings and found that Ly posed a risk of harm due to mental illness. Accordingly, pursuant to Minn. Stat. § 253B.09 (2022), the district court committed him to the care of appellant, Jodi Harpstead, in her official capacity as Commissioner of the Department of Human Services after finding that Ly had a "high level of need" requiring "involuntary long-term care." At the time of his commitment, Ly remained in jail and his admission to a state-operated treatment program was subject to administrative priority. *See* Minn. Stat. § 253B.10, subd. 1(b) (2022). At the time, the Priority Admission statute required that covered patients "must be admitted to a state-operated treatment program within 48 hours." *Id.*

Two weeks later, on November 5, 2022, Ly filed a petition seeking writs of mandamus and habeas corpus in Scott County District Court. Ly's petition alleged that the Commissioner failed to carry out a duty under the Priority Admission statute's 48-hour rule and that Ly remained incarcerated in the Scott County Jail. He further alleged that he was receiving inadequate medical care for his schizoaffective disorder and his symptoms were

5

worsening while in jail. As relevant here, Ly sought: (1) relief in the form of a writ of mandamus compelling the Commissioner to immediately admit him to a state-operated treatment program; (2) damages pursuant to Minn. Stat. § 586.09 (2022); and (3) fines for neglect of duty in the maximum amount authorized by Minn. Stat. § 586.10 (2022). Ly requested that damages and fines be assessed on a daily basis, with damages to be determined by the district court "in an amount sufficient to compensate" him for the Commissioner's alleged failure to provide adequate treatment and for the allegedly unlawful deprivation of liberty stemming from his confinement at the Scott County Jail for more than 48 hours.

Apparently based on the allegations in the petition, but without reciting any facts, the district court issued an alternative writ of mandamus on November 9, 2022.[2] The alternative writ read, in relevant part:

1. YOU ARE COMMANDED to immediately admit the Petitioner to a treatment facility or a state-operated treatment program as required under M.S.A. § 253B.10, subd. 1, and until doing so, immediately provide Tokvan Ly with proper care and treatment, best adapted, according to contemporary professional standards, to rendering further supervision unnecessary, including providing him appropriate antipsychotic medication, under the care of a psychiatrist or other suitable medical professional, and providing him such other care and treatment made

---

[2]     A writ of mandamus "may be issued to any . . . person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." Minn. Stat. § 586.01 (2022). The writ may be either "alternative" or "peremptory," and an alternative writ must ordinarily precede a peremptory writ. Minn. Stat. §§ 586.03–.04 (2022). An alternative writ of mandamus includes a recital of facts establishing a defendant's obligation and failure to perform an act, as well as a command that the defendant complete the required act or show cause why she has not done so. Minn. Stat. § 586.03. A peremptory writ of mandamus recites the facts establishing a defendant's obligation and failure to perform an act, as well as a command that the act be done. *Id.*

necessary by his condition and is in keeping with professional standards for such care.

2. OR IN THE ALTERNATIVE YOU ARE COMMANDED to:
   a. Make a return of this writ by filing either an answer to show cause why Petitioner has not been admitted to a treatment facility or a state-operated treatment program as required under M.S.A. §253B.10, subd. 1, and provided treatment as required by M.S.A. §253B.03, subd. 7, or file a demurrer, at least 24 hours before the return hearing. If Defendant answers rather than filing a demurrer, the Court will set a jury trial on contested facts at a time and date to be determined, provided that the parties may waive a jury trial.

The alternative writ indicated that the situation was "emergent and urgent" and set a hearing "to review compliance with this Order and to address the remaining issues raised and relief sought by the Petitioner." The alternative writ further directed that counsel "be prepared to address the merits of this action and immediate actions which may be taken to transfer Petitioner to a treatment facility and provide him treatment required by law."

On November 16, 2022, the Commissioner filed a "Motion to Dismiss/Demurrer" seeking dismissal of the alternative writ and denial of the petition for a writ of habeas corpus.[3] As relevant to this appeal, the Commissioner contended first that the alternative writ "fail[ed] to state any facts showing the obligation of the Commissioner to perform any act, nor does it allege any facts showing the Commissioner's failure to act," meaning that the Commissioner lacked notice of the claim against her and the alternative writ did not

---

[3] Whether the mandamus statute permits defendants to file a motion to dismiss in lieu of an answer is an open question. Because that question is not before us on this appeal, we do not address it. We acknowledge, however, that the lack of guidance on that question has, as this case demonstrates, sown confusion for litigants and frustrated the work of district courts. Greater clarity may well have prevented some of the procedural peculiarities in the district court's handling of this case, which we recognize presented the district court with unusually important and challenging circumstances.

comply with the requirements of Minn. Stat. § 586.03 (2022).  Second, she contended that the alternative writ should be dismissed because Ly failed to affirmatively plead the availability of a medically appropriate bed or the existence of adequate funding for the Commissioner to admit Ly to a medically appropriate bed within 48 hours.  Third, she contended that the alternative writ should be dismissed because the Priority Admission statute was ambiguous as to when the 48-hour rule began to run and therefore could not impose a clear duty on the Commissioner that would warrant mandamus relief.  The Commissioner reserved all her defenses to the petition and the alternative writ.  Also on November 16, 2022, the Commissioner filed a demand and alternative motion to change venue to Ramsey County.  The same day, the Scott County Court Administrator filed a notice of hearing indicating that a "Review Hearing" had been set for November 30, 2022.  No separate hearing was set upon the Commissioner's motions and demand.

Before the hearing, Ly filed responses in opposition to both of the Commissioner's motions, as well as a document styled as a "Bench Memorandum on Procedures in Extraordinary Writ Proceedings."  His stated purposes in filing the "Bench Memorandum" were to "assist the court in understanding the procedures involved in the review and ultimate determination in the two extraordinary writ matters pending" and demonstrate that the court assertedly had the authority to determine the merits of the action at the conclusion of the hearing.

At the hearing on November 30, 2022, the district court required the Commissioner to argue both of her motions, over her objections that the motions had not yet been fully briefed and that she had received no notice that she would be required to argue them at

what had been noticed as a "Review Hearing." The district court denied the venue change and took the motion to dismiss under advisement, providing the Commissioner 48 hours in which to file a reply brief after the hearing. The Commissioner duly filed her reply. On December 5, 2022, Ly filed proposed findings of fact, conclusions of law, and an order to deny the motion to dismiss, order a peremptory writ of mandamus, and enter judgment for Ly. Therein, Ly advanced new arguments, including that a peremptory writ of mandamus should issue on the merits of the petition because the Commissioner had not filed an answer.

On December 21, 2022, the district court entered findings of fact, conclusions of law, and an order denying the Commissioner's motion to dismiss and ordering a peremptory writ of mandamus.[4] It determined the writ should issue based on the facts alleged in Ly's petition, which it viewed as uncontested because the Commissioner filed a motion to dismiss rather than an answer. The district court's order read, in relevant part:

> 2.      This Order shall operate as a Peremptory Writ of Mandamus to Jodi Harpstead, Minnesota Commissioner of Human Services as follows;
>
> > YOU ARE COMMANDED to immediately admit the Petitioner, Tokvan Ly, to a treatment facility or a state-operated treatment program as required under M.S.A. § 253B.10, subd. 1, and to thereafter immediately provide Tokvan Ly with proper care and treatment, as required under M.S.A. § 253B.10, Subd. 1(c), which is best adapted, according to contemporary professional standards, to rendering further supervision unnecessary, including providing him appropriate antipsychotic medication, under the care of a psychiatrist

---

[4]      The district court's order, like Ly's proposed order from which it drew substantially, was entitled "Finding of Fact, Conclusions of Law and Order Denying Demurrer, Ordering a Peremptory Writ of Mandamus, and Judgment for Petitioner." Notwithstanding that title, the district court's order contained no specific language ordering the district court administrator to enter judgment in favor of Ly.

> or other suitable medical professional, and providing him such other care and treatment made necessary by his condition and is in keeping with professional standards for such care, as required by M.S.A. § 253B.03, subd. 7.
>
> YOU ARE COMMANDED to provide the Court with 30-day reports concerning all cases in the State of Minnesota to which the 48-hour rule applies, identifying the originating County and the time and date that the 48-hour period would have expired for each patient. These reports must include affidavits or other documents or evidence demonstrating the resources utilized with regard to these cases. In addition, the reports must include updated capacity issues of all relevant treatment centers. The first such report shall be due by close of business on January 15, 2023.

(Emphasis omitted.) We refer to these two forms of mandamus relief ordered by the district court as the "admission requirement" and the "reporting requirement," respectively. The district court imposed the reporting requirement sua sponte and without citation to any legal authority.[5]

In addition to a finding of liability on the petition for writ of mandamus, the district court set a fact trial regarding the specific damages incurred by Ly on account of the finding that the Commissioner had failed to comply with the Priority Admission statute's 48-hour rule; reserved decision on the petition for writ of habeas corpus; set a hearing for January 3, 2023, to review the Commissioner's compliance with the peremptory writ; and directed the parties to participate in alternative dispute resolution.

On December 23, 2022, Ly was admitted to treatment in the care of the Commissioner at Anoka-Metro Regional Treatment Center. The Commissioner filed

---

[5] The Commissioner duly complied with the district court's reporting requirement. On August 2, 2023, she moved for the reporting requirement to be stayed pending this appeal, which the district court granted two months later on October 19, 2023.

sworn declarations from two executive medical staff members, which reflect that Ly's admission was based on his position on the priority admission waiting list.

On December 27, 2022, the Commissioner promptly appealed the order issuing the peremptory writ to the court of appeals.[6] The court of appeals questioned its jurisdiction and directed the filing of memoranda on the issue, which both parties timely filed. The court of appeals subsequently entered an order dismissing the appeal as premature. *Ly v. Harpstead*, No. A22-1826, Order Op. (Minn. App. filed Feb. 7, 2023). In its order, the court of appeals found that the order issuing the writ was not immediately appealable under Minn. R. Civ. App. P. 103.03(g) because the district court's reservation of the damages issue meant that the order was not final. The court of appeals considered and disregarded older decisional law of our court that allowed an appeal to lie directly from an order issuing a peremptory writ of mandamus, instead invoking *Ullrich v. Newburg Township Board*, 648 N.W.2d 743 (Minn. App. 2002), to find that an appeal could lie only from a final judgment entered pursuant to a mandamus order. Because judgment in this case had not yet been entered upon the writ, the court of appeals found the Commissioner's appeal was premature and the court lacked jurisdiction to hear it. We granted review.

**ANALYSIS**

In proceeding with our inquiry, we first address whether this appeal has become moot. Second, we consider whether appeal may be taken directly from an order issuing a

---

[6]     Also on December 27, 2022, the Commissioner filed a petition for discretionary review in the court of appeals, which the court of appeals subsequently denied. *Ly v. Harpstead*, No. A22-1828, Order Op. (Minn. App. filed Feb. 7, 2023).

peremptory writ of mandamus, rather than from judgment entered upon the writ. Third, we address our own authority to suspend the Rules of Civil Appellate Procedure, exercise jurisdiction over the Commissioner's appeal, and remand to the court of appeals to consider the merits of the appeal.

I.

Before reaching the principal issue presented by this case, we must address whether this case is moot. Ly raised the issue of mootness in his responsive brief before this court, noting that he has already been transferred to a treatment facility, treated, and subsequently discharged from the care of the Commissioner. The Commissioner does not dispute that her appeal of the admission requirement has been mooted in part by Ly's transfer, treatment, and discharge, but she contends this appeal is not moot because of the outstanding issue of mandamus damages and the ongoing reporting requirement.

It is an axiomatic legal principle that courts in Minnesota may only hear actual cases and controversies. *See In re Application of the Senate*, 10 Minn. 78, 81 (1865). Our court will decline to hear cases that have become moot "because courts do 'not issue advisory opinions or decide cases merely to make precedents.' " *Winkowksi v. Winkowski*, 989 N.W.2d 302, 308 n.7 (Minn. 2023) (quoting *Sinn v. City of St. Cloud*, 203 N.W.2d 365, 366 (Minn. 1972)). When faced with an appeal where "a decision on the merits is no longer necessary or an award of effective relief is no longer possible," we will dismiss it as moot. *Dean v. City of Winona*, 868 N.W.2d 1, 5 (Minn. 2015). "A moot case is nonjusticiable." *Snell v. Walz*, 985 N.W.2d 277, 283 (Minn. 2023). "Justiciability is an issue of law that we review de novo." *Id.*

12

Ly's suggestion of mootness need not detain us long. Although he contends that this appeal is moot because the Commissioner has transferred, treated, and discharged him, he also acknowledges that the order on appeal obligates the Commissioner to provide monthly reports concerning all individuals statewide awaiting admission to a treatment facility under the Priority Admission statute.

Ly cites no authority compelling us to dismiss an appeal as moot notwithstanding the existence of a live controversy as to the reporting requirement. Indeed, that very notion is in considerable tension with the idea of mootness as safeguarding that "Minnesota courts may only hear actual cases and controversies." *See Winkowski*, 989 N.W.2d at 308 n.7; *see also Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (citation omitted) (internal quotation marks omitted)); *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam) ("[E]ven the availability of a partial remedy is sufficient to prevent a case from being moot." (citation omitted) (internal quotation marks omitted)); *cf. Dean*, 868 N.W.2d at 8–9 (dismissing case as moot where "no live case or controversy regarding the claims that appellants actually pleaded" existed and declining to address live constitutional claim on account of forfeiture).

Furthermore, even if the reporting requirement did not exist, this appeal would not be moot because a decision in the Commissioner's favor still provides an opportunity for meaningful relief notwithstanding Ly's transfer, treatment, and discharge. The district court's peremptory writ determined the Commissioner's liability but reserved the issue of damages for decision at a fact trial. If the Commissioner succeeds on the present appeal,

she would be allowed to proceed with her merits appeal of the peremptory writ order before the court of appeals. A decision in favor of the Commissioner on the merits appeal could reverse the district court's liability determination and allow the Commissioner to avoid a damages trial.[7] Therefore, even disregarding the reporting requirement, the present appeal is not moot.

## II.

The heart of this appeal is whether an order issuing a peremptory writ of mandamus may be immediately appealed as of right when a district court has reserved decision on the issue of damages sought upon the writ. Because the existence of appellate jurisdiction is a question of law, we review this question de novo. *See In re Polaris, Inc.*, 967 N.W.2d 397, 405 (Minn. 2021). We note that the "Rules of Civil Appellate Procedure shall apply in all proceedings on the writ" of mandamus. Minn. Stat. § 586.11 (2022).

As this case undeniably demonstrates, "[h]istorically, there has been little uniformity in the manner in which an aggrieved party has sought review by an appellate court in mandamus proceedings." *Schiltz v. City of Duluth*, 449 N.W.2d 439, 440 (Minn. 1990) (collecting cases); *see also State ex rel. Bd. of Comm'rs v. McKellar*, 99 N.W. 807, 808 (Minn. 1904) ("It must be admitted that there is considerable uncertainty as to the correct procedure to be observed in bringing mandamus cases to this court for review."). Much of this confusion has centered around whether an appeal may be taken from the writ itself, or whether appeal must be taken from judgment entered upon the writ. *See, e.g.,*

---

[7]     We express no opinion as to the proper disposition of the Commissioner's merits appeal, which is not currently before us.

14

*Ullrich*, 648 N.W.2d at 743 (Minn. App. 2002). We therefore address the threshold question of whether the Commissioner may properly appeal from the district court's order issuing the peremptory writ rather than from judgment entered upon the writ.

Without question, the mandamus statute permits an appeal from judgment. *See* Minn. Stat. § 586.09 ("An appeal from the district court shall lie to the court of appeals in mandamus as in other civil cases."); *State ex rel. Mortenson v. Copeland*, 77 N.W. 221, 222 (Minn. 1898) (interpreting the mandamus statute appeal provision as "contemplat[ing] the entry of a formal judgment upon the court's conclusions of law, the same as in an ordinary civil action"). The Rules of Civil Appellate Procedure permit appeal from a final judgment or from a partial final judgment entered pursuant to Minn. R. Civ. P. 54.02. *See* Minn. R. Civ. App. P. 103.03(a).

However, older decisional law of our court recognized that appeal in mandamus may lie "[i]ndependent of [the appeal] provision of [the mandamus] statute" because "an order of a district court allowing a peremptory mandamus is appealable . . . as 'a final order affecting a substantial right made in a special proceeding.'" *Matthews*, 17 N.W. at 339 (quoting Minn. Gen. Stat. ch. 86, § 8, subd. 6 (1878)) (emphasis omitted). Accordingly, before the promulgation of the Rules of Civil Appellate Procedure, we repeatedly endorsed the *Matthews* rule allowing appeal from orders issuing a peremptory writ rather than from a judgment. *See Copeland*, 77 N.W. at 222; *McKellar*, 99 N.W. at 808; *State ex rel. Boldt v. St. Cloud Milk Producers' Ass'n*, 273 N.W. 603, 605 (Minn. 1937); *Indep. Sch. Dist. of White Bear Lake v. City of White Bear Lake*, 292 N.W. 777, 778 (Minn. 1940). The Rules of Civil Appellate Procedure permit appeal from a final order in a special proceeding. *See*

15

Minn. R. Civ. App. P. 103.03(g) (an appeal may lie, "except as otherwise provided by statute, from a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding.").

Further complicating the matter, our decisions in the decades following *Matthews* also developed the alternate rationale that appeal under *Matthews* was disfavored but permissible because an order issuing the writ was an "irregular" judgment. *Copeland*, 77 N.W. at 222; *Boldt*, 273 N.W. at 605; *City of White Bear Lake*, 292 N.W. at 778–79, 782. Notably, since the promulgation of the Minnesota Rules of Civil Appellate Procedure in 1967, this court has yet to address the viability of appeal from an order issuing a peremptory writ under *Matthews* or under the "irregular judgment" rationale followed in *Copeland*.

Against this convoluted legal backdrop, the Commissioner contends that appeal may lie from the district court's order issuing the peremptory writ: (A) pursuant to Rule 103.03(g) under *Matthews*, or (B) pursuant to Rule 103.03(a) because the district court's order was a form of irregular judgment.[8] We address these contentions in turn.

---

[8] The Commissioner also argues that appeal may lie pursuant to Rules 103.03(b) and (j) of the Minnesota Rules of Civil Appellate Procedure. To the extent the Commissioner's arguments as to Rule 103.03(b) can be said not to have been forfeited by her failure to raise them below, they are easily dismissed. The district court's order is not appealable pursuant to Rule 103.03(b) because it was not an injunction under our functional test. *See Howard v. Svoboda*, 890 N.W.2d 111, 114–15 (Minn. 2017). Additionally, we decline to find the district court's order appealable under the catch-all provision in Rule 103.03(j) where the Commissioner has offered no substantive argument addressed to that provision.

A.

An appeal may be taken to the court of appeals "except as otherwise provided by statute, from a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding." Minn. R. Civ. App. P. 103.03(g). Under our decision in *Matthews* nearly a century and a half ago, appeal from an order issuing a writ of mandamus was available under Rule 103.03(g) as a special proceeding "[i]ndependent" of the mandamus statute's appeal provision. 17 N.W. at 339. This case requires us to determine whether *Matthews* remains good law.

Since at least 1863, the mandamus statute has provided for appeal "as in civil actions." Minn. Gen. Stat. ch. 80, § 13 (1863). It remains substantively unchanged to this day. *See* Minn. Stat. § 586.09 ("An appeal from the district court shall lie to the court of appeals in mandamus as in other civil cases."). This provision has been interpreted as "contemplat[ing] the entry of a formal judgment upon the court's conclusions of law, the same as in an ordinary civil action." *Copeland*, 77 N.W. at 222; *accord State v. Anderson*, 58 N.W.2d 257, 259 (Minn. 1953); *Hanson v. Emanuel*, 297 N.W. 176, 177 (Minn. 1941) ("[F]indings of fact and conclusions of law and a judgment are required in mandamus, which is a special proceeding, in virtue of the statute that it be tried as a civil action."); *Ullrich*, 648 N.W.2d at 745 (Minn. App. 2002).

In *Matthews*, we found that appeal in mandamus may lie "[i]ndependent of [the appeal] provision of [the mandamus] statute" because "an order of a district court allowing a peremptory mandamus is appealable . . . as 'a final order affecting a substantial right made in a special proceeding.'" *Id.* (quoting Minn. Gen. Stat. ch. 86, § 8, subd. 6 (1878))

17

(emphasis omitted). In permitting the extra-statutory appeal of a peremptory writ of mandamus as a final order in a special proceeding, *Matthews* cited to a decision of New York's intermediate appellate court interpreting the statutory appeals procedure in that state's "Field Code" of civil procedure.[9] *See Matthews*, 17 N.W. at 339 (citing *People ex rel. Merriam v. Schoonmaker*, 19 Barb. 657 (N.Y. Gen. Term. 1855), *rev'd on other grounds* 13 N.Y. 238 (1855)). *Schoonmaker* held that a mandamus action was a "special proceeding" and therefore appealable under a provision "authorizing an appeal . . . 'from any judgment, order or final determination made at any special term of the court, in any special proceeding therein.' " 19 Barb. at 658 (quoting 1854 N.Y. Laws, ch. 270).

Over the next 60 years, our decisions followed *Matthews* to allow appeal from orders issuing a peremptory writ rather than from a judgment. *See Copeland*, 77 N.W. at 222; *McKellar*, 99 N.W. at 808; *Boldt*, 273 N.W. at 605; *City of White Bear Lake*, 292 N.W. at 778. While noting that the practice of appeal from the writ, rather than from judgment entered upon the writ, was disfavored, we repeatedly permitted such appeals on the basis that an order directing the issuance of the writ was itself a form of "irregular" judgment. *Copeland*, 77 N.W. at 222; *Boldt*, 273 N.W. at 605; *City of White Bear Lake*, 292 N.W. at 778–79, 782.

At the time of the *Matthews* decision, the bases for appellate jurisdiction were set by statute, rather than by rule. The statutory basis for appellate jurisdiction relied on by

---

[9]     In 1858, Minnesota substantially adopted New York's statutory rules of civil procedure known as the "Field Code" to govern civil proceedings in this state. *See* 1 David F. Herr & Roger S. Haydock, *Minnesota Practice—Civil Rules Ann.* Preface (6th ed. 2017).

*Matthews* was recodified several times without relevant substantive amendment until 1963.

In 1963, the Legislature amended the statute, then codified at Minn. Stat. § 605.09(7) (1961), to insert language limiting the availability of appeals in "special proceedings" where appeal was otherwise provided for by statute. *See* 1963 Minn. Laws 1417 (codified as amended at Minn. Stat. § 605.09(h) (1965)) ("1963 amendment").[10] Upon promulgation of the Rules of Civil Appellate Procedure in 1967, Rule 103.03 was intended to be "substantially identical" to Minn. Stat. § 605.09 (1965).[11] *See* Minn. R. Civ. App. P. 103 advisory comm. note—1967. Ultimately, the basis for appellate jurisdiction in *Matthews* is today codified at Rule 103.03(g), which provides that an appeal may lie, "except as otherwise provided by statute, from a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding."

In considering *Matthews'* continued viability, three aspects of the decision are noteworthy. First, the basis for appeal in *Matthews* was "independent" of the basis for

---

[10]     As relevant here, the 1963 amendment was as follows, with deletions shown by stricken text and additions indicated by underlined text:

> **605.09 Appealable judgments and orders.**     An appeal may be taken to the supreme court ~~by the aggrieved party in the following cases~~:
>       . . . .
>       (g) <u>Except as otherwise provided by statute,</u> from ~~a~~ <u>the</u> final order<u>,</u> ~~or~~ <u>judgment</u> affecting a substantial right~~,~~ made in a special proceeding, <u>provided that the appeal must be taken within the time limited for appeal from an order;</u> ~~or upon a summary application in an action after judgment.~~

1963 Minn. Laws 1416–17.

[11]     The Legislature explicitly repealed Minn. Stat. § 605.09 in 1974 in order to "eliminat[e] . . . conflict[s] with the rules of civil appellate procedure." Act of Apr. 9, 1974, ch. 394, preamble & § 11, 1974 Minn. Laws 702, 702, 707.

appeal set forth in the mandamus statute. Second, the *Matthews* court understood the statutory basis for appeal to authorize appeals only from a *final* judgment. Third, the "independent" or extra-statutory basis for appeal recognized for the first time in *Matthews* was under a statutory provision allowing appeal from "a final order affecting a substantial right, made in a special proceeding." Minn. Gen. Stat. ch. 86, § 8, subd. 6 (1878).

When *Matthews* was decided, the mandamus statute provided for the appeal of mandamus "as in civil actions." Minn. Gen. Stat. ch. 80, § 14 (1878). This provision remains substantively unchanged to the present day. Minn. Stat. § 586.09 (providing for appeal "in mandamus as in other civil cases"). The implication in *Matthews* that appeal "as in civil actions" meant appeal from a *final* judgment was expressly confirmed and consistently applied by our court through to the present day. *Anderson*, 58 N.W.2d at 259; *Hanson*, 297 N.W. at 177; *Copeland*, 77 N.W. at 222; *see also Ullrich*, 648 N.W.2d at 745. This history reflects that Minn. Stat. § 586.09's provision for mandamus appeal "as in other civil cases" has always "provided by statute" how appeal may be taken in mandamus.

The 1963 amendment that inserted the phrase "except as otherwise provided by statute" to the predecessor of today's Rule 103.03(g) resolves the question about the continued viability of the *Matthews* rule. When *Matthews* was decided, appeal was available from "a final order affecting a substantial right, made in a special proceeding." Minn. Gen. Stat. ch. 86, § 8, subd. 6 (1878). This basis for appeal persisted without relevant substantive change until 1963, when it was altered to limit the availability of a "special proceeding" appeal where appeal was "otherwise provided for by statute." *See* 1963 Minn. Laws 1417; *see also* Note, *Appealable Orders, Prohibition, and Mandamus in Minnesota*,

51 Minn. L. Rev. 115, 135 (1966) (noting that the "otherwise provided for by statute" clause: (1) was added to clarify that the special proceedings appeal provision did not supersede statutory provisions otherwise setting the manner of appeal; and (2) repudiated case law applying the special proceeding rule even where a statute directed that an appeal proceed "as in civil actions"). The substance of that basis for appeal is now reflected in Rule 103.03(g).

Putting this all together, *Matthews* and the decisions of our court following it were decided before the 1963 amendment to the predecessor of Rule 103.03(g) was enacted. At the time of each of those decisions, appeal from a final order in a special proceeding was permitted, even where another avenue of appeal was provided for by statute. Thus, the "independent," extra-statutory basis for a mandamus appeal recognized in *Matthews* and followed as recently as 1940 in *City of White Bear Lake* was consistent with the scope of the statutory basis for appellate jurisdiction at the time. However, the 1963 amendment to the statutory predecessor of Rule 103.03(g) circumscribed that basis for appellate jurisdiction by eliminating the appealability of a final order in a special proceeding where appeal was "otherwise provided for by statute." The mandamus statute has always provided for appeal from final judgment. Accordingly, the 1963 amendment extinguished the availability of a mandamus appeal as a special proceeding, and *Matthews* is no longer good law. An order issuing a peremptory writ of mandamus is thus not appealable under Rule 103.03(g).

21

B.

The Commissioner alternatively argues that a different subpart of the Rules of Civil Appellate Procedure, Rule 103.03(a), allows for appeal directly from the district court's order issuing the peremptory writ. Under Rule 103.03(a), appeal may be had from a final judgment or from a partial final judgment entered pursuant to Minn. R. Civ. P. 54.02. While conceding that there has been no formal entry of judgment, the Commissioner contends that the order issuing the writ is itself a form of "irregular judgment" from which an appeal may lie under Rule 103.03(a).

That an order issuing the writ might be considered an irregular judgment emerged from our 1898 decision in *Copeland*. There, we observed that "the old practice," or *Matthews* basis of appeal, was inconsistent with the mandamus statute's appeal provision. *Copeland*, 77 N.W. at 222. Nevertheless, faced with an appeal taken from an order issuing a peremptory writ of mandamus, which the trial court "evidently intended" to operate as final judgment on the writ, we held the trial court's order "to be the judgment of the court, although an irregular one, and, consequently, that an appeal will lie from it." *Id.*[12]

Six years later, *Copeland*'s treatment of an order issuing a peremptory writ of mandamus as a form of irregular judgment came under direct criticism in *McKellar*, where we observed that:

---

[12]     We observe that *Copeland*'s reference to an irregular judgment bears scant resemblance to the common legal definition of the term. *See Irregular Judgment*, *Black's Law Dictionary* (11th ed. 2019) ("A judgment that may be set aside because of some irregularity in the way it was rendered, such as a clerk's failure to send a defendant notice that a default judgment has been rendered.").

22

[In *Copeland*], attention was called to the fact that the statute . . . expressly provided for the entry of judgment in such cases from which an appeal would lie. It was accordingly held in that case that an order directing that a peremptory writ of mandamus issue was a judgment, though an irregular one; hence it was appealable as a judgment. Judged by the practical working of the rule thus laid down, it would now seem that it would have been better to have held that the order was simply one for a judgment, and therefore not appealable.

*McKellar*, 99 N.W. at 808.

Although *McKellar* clearly articulated that *Copeland*'s irregular judgment rationale was incorrect, it did not conclusively disclaim the practice. Instead, *McKellar* simply held that the "approved and correct procedure" was to appeal from judgment entered upon the writ, and that an appeal from an order directing issuance of the writ was "irregular practice, which should not be encouraged." *Id.*

Although *McKellar* sought to end the practice of treating orders issuing the writ as a form of irregular judgment, we subsequently relied on this legal fiction to allow an appeal to proceed on two other occasions. In 1937, our decision in *Boldt* glossed over *McKellar*'s discussion of the doctrinal flaws in treating orders issuing the writ as irregular judgments and instead cited *McKellar*'s recital of the *Copeland* holding as if it were the operative statement of law. *See Boldt*, 273 N.W. at 605. On that basis, the *Boldt* court permitted an appeal to lie from an order issuing the peremptory writ as from an irregular judgment. *Id.* Three years later, we cited to *Boldt* to allow for appeal from another order issuing the writ. *See City of White Bear Lake*, 292 N.W. at 778–79, 782.

As this history reflects, the irregular judgment rationale that the Commissioner asks us to endorse in permitting her appeal to proceed under Rule 103.03(a) rests on a shaky

23

foundation. Although we relied on the irregular judgment rationale once in *Copeland*, we soon revisited that in *McKellar*, where we denounced the practice of allowing for appeal from orders issuing the writ as from a judgment and indicated that it was a disfavored and "irregular practice." The subsequent resuscitation of this practice in *Boldt* was based on a misreading of *McKellar* and provided no independent reasoning to support the notion that an order issuing the writ is an irregular judgment. Further, in none of these decisions did we ever define what was meant by the term "irregular judgment" nor contend with the full implications of an irregular judgment exception to the general rule that appeal be taken from final judgment, which is now reflected in Rule 103.03(a).

Under the modern Rules-based practice, we do not think the final judgment rule is so easily sidestepped. To the extent that our decisions in *Copeland*, *Boldt*, and *City of White Bear Lake* endorsed the legal fiction that an order issuing a peremptory writ of mandamus is appealable as an irregular judgment, we overrule them and disclaim the practice.

In any event, even if we were to conclude that an order issuing a peremptory writ of mandamus is, as a general matter, an appealable judgment under Rule 103.03(a), on account of the "irregular judgment" language in our decisions in *Copeland*, *Boldt*, and *City of White Bear Lake*, such an order would still need to satisfy the requirement of finality under Rule 103.03(a) to be appealable at this time. The Commissioner does not meaningfully advance arguments addressed to the finality requirement under Rule

24

103.03(a),[13] and our case law plainly reflects that the district court's order issuing the peremptory writ of mandamus in this case is not a final judgment for the purposes of Rule 103.03(a). *See T.A. Schifsky & Sons, Inc. v. Bahr Const., LLC*, 773 N.W.2d 783, 788 (Minn. 2009) ("A final judgment 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting *Riley v. Kennedy*, 553 U.S. 406, 419 (2008))); *In re Commodore Hotel*, 318 N.W.2d 244, 246 (Minn. 1982) ("There cannot be a final judgment until both liability and the amount of damages are judicially determined." (quoting *Aetna Cas. & Sur. Co. v. Jeppesen & Co.*, 440 F. Supp. 394, 403 (D. Nev. 1977)) (internal quotation marks omitted)).

Because the district court's order directing issuance of the peremptory writ reserves determination on the issue of damages, it is not final and thus would not be appealable even if we were to carry forward our prior practice of treating orders issuing peremptory writs as "irregular" judgments. Accordingly, the district court's order is neither a judgment nor final, and it is therefore not appealable under Rule 103.03(a).[14]

---

[13] The Commissioner's arguments that she satisfied the finality requirement under Rule 103.03(g) have little relevance to our analysis of the finality requirement under Rule 103.03(a) because they focus on the district court's assertedly final determination of the Commissioner's positive legal rights. While we have found the finality requirement under Rule 103.03(g) satisfied where an order finally determines a positive legal right of the appellant, *see, e.g., In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 754–55 (Minn. 2005), we have never done so in the context of Rule 103.03(a).

[14] Our conclusion accords with the outcome reached by other state appellate courts addressing the appealability of mandamus orders with pending damages claims. *See, e.g., Kenosha Pro. Firefighters, Loc. 414, IAFF, AFL-CIO v. City of Kenosha*, 766 N.W.2d 577, 585–88 (Wis. 2009) (dismissing appeal of mandamus order as non-final where one requested element of relief remained outstanding and statutory damages calculation was not yet final); *Chandler (U.S.A.), Inc. v. Tyree*, 87 P.3d 598, 600–01 (Okla. 2004)

## III.

With the clarification we provide today, the court of appeals' ultimate conclusion that it lacked jurisdiction over this appeal under the Rules of Civil Appellate Procedure was entirely correct. But we do not conclude our analysis there. Although always constrained by the jurisdictional limits of the Minnesota and federal constitutions, we have inherent and extraordinary authority to suspend the limits upon appellate jurisdiction imposed by Rule 103.03.

We seldom resort to that authority, and rightly so. Nonetheless, "in a limited number of other cases we have recognized our inherent authority to take an appeal in the interests of justice even when the filing or service requirements set forth in a rule or statute have not been met." *In re Welfare of J.R., Jr.*, 655 N.W.2d 1, 3 (Minn. 2003). This authority to make an exception to the requirements to hear an appeal lies uniquely with our court, as it is rooted in the Minnesota Constitution vesting us with "appellate jurisdiction in all cases." *See State v. Obeta*, 796 N.W.2d 282, 286 (Minn. 2011) (quoting Minn. Const. art. VI, § 2). We have invoked it only "[i]n extremely rare and exceptional cases." *Vang v. State*, 788 N.W.2d 111, 114 (Minn. 2010). This includes instances where the question of appellate jurisdiction itself turns on "interpretation issues," including as to the event from which the appeal period begins to run. *See J.R., Jr.*, 655 N.W.2d at 4 (discussing

---

(dismissing appeal of mandamus order with unresolved damages issue as not a final and appealable order); *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 684 N.E.2d 72, 74–75 (Ohio 1997) (same); *Bd. of Trs. v. Sanchez*, 101 P.3d 339, 341–42 (N.M. Ct. App.), *cert. denied*, 103 P.3d 580 (N.M. 2004) (same).

*Krug v. Indep. Sch. Dist. No. 16*, 293 N.W.2d 26, 29 (Minn. 1980) and *E.C.I. Corp. v. G.G.C. Co.*, 237 N.W.2d 627, 629 (Minn. 1976)).

The Rules of Civil Appellate Procedure also provide that "[i]n the interest of expediting decision upon any matter before it, or for other good cause shown, the Supreme Court . . . may suspend the requirements or provisions of these rules . . . on its own motion . . . ." Minn. R. Civ. App. P. 102.[15]  Because Rule 102 refers to the suspension of any "provision" or "requirement" of the Rules of Civil Appellate Procedure, it is appropriate to identify the specific requirements or provisions to be suspended.  When we suspend the rules pursuant to Rule 102, we "may order proceedings in accordance with [our] direction." *Id.*

We have previously explained that we will use our suspension authority under Rule 102 to take jurisdiction over a defective appeal "where the facts and circumstances contributing to the defect persuade us that [an] appellant was not inexcusably dilatory and that justice would be better served by reaching the merits of the case." *LeRoy v. Marquette Nat'l Bank of Minneapolis*, 277 N.W.2d 351, 353 (Minn. 1979).  We have invoked Rule 102 where a case's "particular circumstances" convinced us that an "appellant's defective appeal arose from a genuine misconstruction of Rule 103.03." *Id.* at 354.

We have occasionally observed such rare circumstances and acted sua sponte to suspend the rules and take jurisdiction over an order that is otherwise unappealable under

---

[15]  Our suspension authority under Rule 102 extends to any provision of the Rules of Civil Appellate Procedure, with the sole exception of Rule 126.02 (relating to the extension or limitation of time), which is not relevant here, and does not otherwise limit our inherent authority.  *See* Minn. R. Civ. App. P. 102.

27

Rule 103.03. *See O'Brien v. Mercy Hosp. and Convalescent*, 382 N.W.2d 518, 520 n.2 (Minn. 1986) (taking jurisdiction over unappealable order because of "important and doubtful" constitutional question not properly presented for appeal); *Ruberg v. Skelly Oil Co.*, 297 N.W.2d 746, 749 (Minn. 1980) (citing *LeRoy*) (taking jurisdiction over unappealable order for judgment where amendment to Rule 103.03(a) would have made order appealable prior to decision); *Lange v. Schweitzer*, 295 N.W.2d 387, 388 n.1 (Minn. 1980) (taking jurisdiction over unappealable order in the "interests of justice" to clarify conflicting case law on tortfeasor contribution); *Twin City Fed. Sav. and Loan Ass'n v. Cochrane*, 295 N.W.2d 87, 89 n.1 (Minn. 1980) (citing *LeRoy*) (taking jurisdiction over unappealable order denying vacatur of attorneys' fees award and disregarding arguable forfeiture where fundamental merits issue was "easily resolved" and supported decision of trial court); *Henderson v. Est. of Snodgrass*, 185 N.W.2d 697, 697 (Minn. 1971) (taking jurisdiction over unappealable order where "enforc[ing] a rigid application" of Rule 103.03 would disallow pro se plaintiff's appeal); *Brekken v. Holien*, 182 N.W.2d 717, 718 (Minn. 1970) (taking jurisdiction over unappealable order where appellant could have timely appealed from final judgment). As the supreme court, we are uniquely positioned to ascertain and determine for ourselves when a situation warrants the exercise of this extraordinary judicial authority.[16]

---

[16] Accordingly, when we have considered relying on Rule 102 to take jurisdiction over a defective appeal upon the application of an appellant, our review for good cause has been exacting. *See Howard v. Svoboda*, 890 N.W.2d 111, 116 (Minn. 2017).

This case presents several circumstances that persuade us of the appropriateness of invoking our inherent authority and our authority under Rule 102, even though the district court order on appeal fails to satisfy the final judgment requirement of Rule 103.03(a). First, the defect in the Commissioner's appeal results from a "genuine misconstruction" of Rule 103.03 that raises a question as to when the appeal period begins to run. *See LeRoy*, 277 N.W.2d at 354; *see also J.R., Jr.*, 655 N.W.2d at 4. The Commissioner had little clarity about the availability of, and proper basis for, an appeal from the district court's order issuing the peremptory writ. It appears that she reasonably relied on decisions of our court that, until our decision herein, had never been recognized, expressly or impliedly, as having been superseded or overruled. The potential availability of appeal may well have proven consequential in determining the Commissioner's response to a district court order of undeniable consequence and statewide impact. *See, e.g., State v. Deal*, 740 N.W.2d 755, 769 (Minn. 2007) (availability of error correction by appeal generally makes issuance of a writ of prohibition inappropriate). Second, this appeal raises potentially complex, unaddressed questions of procedural law in mandamus, the resolution of which may greatly aid courts in effectively and expeditiously managing mandamus actions. Indeed, the resolution of such questions might help avoid future unappealable orders of the present sort. Third, this case implicates weighty separation of powers concerns that militate against subjecting the Commissioner to further delay.[17]

---

[17]     While our invocation of our inherent authority and Rule 102 does not rest on it, we note that the Commissioner, the justice system, and, most of all, inmates in situations of judicially recognized mental health crisis requiring commitment, stand to benefit from further clarity about the nature of the duty created by the Priority Admission statute.

In view of the foregoing circumstances, we act under our inherent authority and our authority under Rule 102 to suspend the final judgment requirement under Rule 103.03(a) and exercise appellate jurisdiction over the Commissioner's appeal. In the exercise of that jurisdiction, we therefore remand this case to the court of appeals for consideration of the merits of the Commissioner's appeal.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals, exercise appellate jurisdiction over the Commissioner's appeal, and remand to the court of appeals to conduct further proceedings consistent with this opinion.

Reversed and remanded.

PROCACCINI, J., took no part in the consideration or decision of this case.

HENNESY, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.